# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL LANDRY, and TREADWELL FRANKLIN INFRASTRUCTURE CAPITAL LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> WORLD MARINE OFFSHORE A/S, WORLD MARINE OFFSHORE LLC, LARS CHRISTIAN ZØHNER, HANS SCHNEIDER, and JIMMY KRISTENSEN, <br><br> *Defendants.* | Civil Action No. 22-cv-11432-AK <br><br> Motion for Leave to File Additional Pages Granted December 2, 2022 |

**World Marine Offshore A/S and World Marine Offshore LLC's**
**Memorandum in Support of Their Motion to Dismiss**

December 2, 2022

WORLD MARINE OFFSHORE A/S and
WORLD MARINE OFFSHORE LLC

Megan A. Siddall
BBO No. 568979
101 Federal Street
Suite 650
Boston, MA 02110
Tel: 617-202-5178
Fax: 617-202-5893
msiddall@msdefenders.com

Patrick O'Donnell
Stephen W. Miller
HWG, LLP
1919 M St. NW
Suite 800
Washington, DC 20036
Tel: 202-730-1300
Fax: 202-730-1301
podonnell@hwglaw.com
smiller@hwglaw.com
*Admitted pro hac vice*

## Table of Contents

*Table of Authorities* ............................................................................................ ii

*I.  Facts Alleged* ................................................................................................ 1

  A.  Background ................................................................................................ 1

  B.  The Parties Pursue Offshore Wind Charters ................................................ 2

  C.  The Parties Formalize Their Agreement ...................................................... 3

  D.  The Parties Further Pursue Offshore Charter Work .................................... 5

  E.  Plaintiffs Propose Changes to Commercial Terms and the Addition of New Parties, and Defendant World Marine Terminates its Participation ...................................... 6

*II.  Argument* ................................................................................................... 6

  **A.  Motion to Dismiss Standard** ..................................................................... 7

  **B.  Count I (Breach of the Implied Duty of Good Faith and Fair Dealing) Must be Dismissed Because it is Contradicted by the Terms of the Contract** ........................ 7

    1.  The Parties Agreed to Give Each Other "Sole Discretion" to Withdraw ...................... 8

    2.  The Parties Agreed That the Substantive Commercial Terms Were Aspirational and Not Binding ............................ 10

  **C.  Count II (Breach of Fiduciary Duty) Should Be Dismissed Because Plaintiffs Fail to Identify Any Fiduciary Duty Owed Defendants or How Any Such Duty Was Breached** ............................................................. 12

  **D.  Count III (Breach of Contract) Should be Dismissed Because Plaintiffs Do Not Allege Defendants Competed in the Business** ......................................................... 16

    1.  The MOU and interim operating agreements prohibit competition in the provision of maritime logistics services in the United States and its territorial waters. ...................... 17

    2.  Plaintiffs cannot state a claim for breach of the non-competition agreement against defendants who are not parties to that contract ............................ 18

    3.  Plaintiffs cannot state a claim for breach of the non-competition agreement where World Marine did not engage in the Business and followed the express provisions of the MOU. ............................ 18

  **E.  Plaintiffs' Claims of Fraud (Counts VI) and Fraudulent Inducement (Count IV) Should Be Dismissed Because Plaintiffs Fail to Allege Fraud With The Specificity That Is Required Under Fed. R. Civ. P. 9(b)** ................................................. 21

  **F.  Plaintiffs' Claims for Tortious Interference with a Contractual Relationship (Count V) Must Be Dismissed.** ..................................................................... 23

  **G.  Plaintiffs' Negligent Misrepresentation Claim (Count VII) Must Be Dismissed.** ...... 26

*III.  Conclusion* ................................................................................................ 29

## Table of Authorities

*ADH Collision of Bos., Inc. v. Wynn Resorts, Ltd.*,
No. 19-CV-10246-RGS, 2020 WL 3643509 (D. Mass July 6, 2020) ............................ 26

*Ahsan v. Homebridge Fin. Servs, Inc.*,
405 F. Supp. 3d 208 (D. Mass. 2019) ............................................................. 14

*Alston v. Spiegel*,
988 F.3d 564 (1st Cir. 2021) ...................................................................... 7

*Am. Paper Recycling Corp. v. IHC Corp.*,
707 F. Supp. 2d 114 (D. Mass. 2010) ............................................................ 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 7

*Ayash v. Dana-Farber Cancer Inst.*,
443 Mass. 367 (2005) .............................................................................. 8

*Balles v. Babcock Power, Inc.*,
476 Mass. 565 (2017) ............................................................................ 17

*Blixeth v. Byrne*,
214 F. Supp. 3d 97 (D. Mass. 2016) ............................................................. 25

*Bulwer v. Mount Auburn Hosp.*,
473 Mass. 672 (2016) ............................................................................ 16

*Chokel v. Genzyme Corp.*,
449 Mass. 272 (2007) ........................................................................ 10, 11

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
455 Mass. 458 (2009) ............................................................................ 26

*DeMarco v. Granite Savings Bank*,
1993 WL 220551 (Mass. App. Ct. June 11, 1993) ............................................... 26

*Doe v. Harbor Sch., Inc.*,
446 Mass. 245 (2006) ............................................................................ 16

*Doyle v. Hasbro, Inc.*,
103 F.3d 186 (1st Cir. 1996) ..................................................................... 22

*Draghetti v. Chmielewski*,
416 Mass. 808 (1994) ............................................................................ 25

*Dumont v. Reily Foods Co.*,
934 F.3d 35 (1st Cir. 2019) ................................................................... 21, 23

*Eigerman v. Putnam Invs., Inc.*,
450 Mass. 281 (2007) ....................................................................... 10, 11, 16

*Frith v. Whole Foods Mkt., Inc.*,
38 F.4th 263 (1st Cir. 2022) ..................................................................... 7

*G.S. Enters., Inc. v. Falmouth Marine, Inc.*,
 410 Mass. 262 (1991) ................................................................................................ 23

*Gen. Convention of New Jerusalem in the U.S. of Am., Inc. v. MacKenzie*,
 449 Mass. 832 (2007) ................................................................................................ 16

*Grajales v. P.R. Ports Auth.*,
 682 F.3d 40 (1st Cir. 2012) .......................................................................................... 7

*Grease Monkey Int'l, Inc. v. Ralco Lubrication Servs., Inc.*,
 24 F. Supp. 2d 120 (D. Mass. 1998) .......................................................................... 18

*Guldseth v. Fam. Med. Assocs. LLC*,
 45 F.4th 526 (1st Cir. 2022) ..................................................................................... 8, 9

*Hayduk v. Lanna*,
 775 F.2d 441 (1st Cir. 1985) ...................................................................................... 22

*Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*,
 44 F.3d 40 (1st Cir. 1995) .......................................................................................... 14

*Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*,
 573 F. Supp. 3d 513 (D. Mass. 2021) ........................................................................ 28

*Katz v. Belveron Real Estate Partners, LLC*,
 28 F.4th 300 (1st Cir. 2022) .................................................................... 14, 15, 21, 23

*Lafayette Place Assocs. v. Bos. Redev. Auth.*,
 427 Mass. 509 (1998) ................................................................................................ 12

*Lawson v. Affirmative Equities Co., L.P.*,
 341 F. Supp. 2d 51 (D. Mass. 2004) .......................................................................... 13

*MacDonald v. Jenzabar, Inc.*,
 92 Mass. App. Ct. 630 (2018) .................................................................................... 17

*Masso v. United Parcel Serv. of Am., Inc.*,
 884 F. Supp. 610 (D. Mass. 1995) ............................................................................. 26

*N. Am. Catholic Educ. Programming Found., Inc.* v. *Cardinale*,
 567 F.3d 8 (1st Cir. 2009) ..................................................................................... 21, 22

*Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*,
 62 Mass. App. Ct 34 (2004) ....................................................................................... 26

*Qestec, Inc. v. Krummenacker*,
 367 F. Supp. 2d 89 (D. Mass. 2005) .......................................................................... 12

*Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*,
 87 Mass. App. Ct. 296 (2015) .................................................................................... 24

*Rodi v. S. New Eng. Sch. of Law*,
 389 F.3d 5 (1ˢᵗ Cir. 2004) ............................................................................................ 7

*Ross v. Deutsche Bank Nat. Tr. Co.*,
 933 F. Supp. 2d 225 (D. Mass. 2013) .......................................................................... 7

*Sachs v. Sprague*,
    401 F. Supp. 2d 159 (D. Mass. 2005) ................................................................ 13

*Sea Tow Services Int'l, Inc. v. Tampa Bay Marine Recovery, Inc.*,
    No. 20-CV-2877(JS)(SIL), 2022 WL 5122728 (E.D.N.Y. Sept. 30, 2022) ..................... 20

*SEC v. Tambone*,
    597 F.3d 436 (1st Cir. 2010) ................................................................................ 7

*Skyhook Wireless, Inc. v. Google, Inc.*,
    86 Mass. App. Ct. 611 (2014) ............................................................................ 25

*Smith v. Jenkins*,
    732 F.3d 51 (1st Cir. 2013) ................................................................................ 15

*Sound Techniques, Inc. v. Hoffman*,
    50 Mass. App. Ct. 425 (2000) ............................................................................ 28

*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020) ................................................................................ 16

*Taylor v. Ford Motor Co.*,
    No. 06-69-B-W, 2006 WL 2228973 (D. Me. 2006) ............................................... 13

*Tersley Invs. Ltd. v. Great Hill Partners*,
    No. 2084-CV-02333, 2021 WL 6246587 (Mass. Super. Ct., Oct. 20, 2021) ................. 25

*Traverse v. Gutierrez Co.*,
    No. 18-CV-10175-DJC, 2019 WL 3082828 (D. Mass. July 15, 2019) ......................... 16

*United States ex. rel. Kelly v. Novartis Pharm. Corp.*,
    827 F.3d 5 (1st Cir. 2016) ............................................................................ 21, 22

*Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp.*,
    441 Mass. 376 (2004) ......................................................................... 7, 8, 11, 12

*Wayne Inv., Inc. v. Gulf Oil Corp.*,
    739 F.2d 11 (1st Cir. 1984) ................................................................................ 21

*Weiss v. DHL Exp., Inc.*,
    718 F.3d 39 (1st Cir. 2013) ................................................................................ 10

*Woods v. Wells Fargo Bank, N.A.*,
    733 F.3d 349 (1st Cir. 2013) ......................................................................... 21, 23

*Zimmerman v. Bogoff*,
    402 Mass. 650 (1988) ...................................................................................... 12

Massachusetts law allows sophisticated commercial parties to agree among themselves to risk their time and capital on exploring projects that might not come to fruition—and to agree that any of them can back out before reaching a final agreement.  That's just what happened in this case: the parties embarked on an exploratory venture, with no obligation to consummate a final deal.  Now, however, Plaintiffs attempt to impose on Defendants the kind of permanent commitments they never made, and to punish them for doing what Plaintiffs themselves agreed any of them could have done.  Because the facts alleged constitute no valid cause of action under Massachusetts law, Defendants World Marine Offshore A/S and World Marine Offshore LLC hereby move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    Facts Alleged[1]

### A.    Background Parties

Plaintiff Michael Landry is a Massachusetts resident who established an entity called Patriot Offshore, Inc., (POI) to build and operate wind farm support vessels.  Complaint, Dkt. 1 ("Compl.") ¶ 14.  He claimed to have "a network."  *Id.* ¶ 15.  Plaintiff Treadwell Franklin Infrastructure Capital LLC (Treadwell) "was to raise capital through its funding partners . . . ."  *Id.* ¶ 32.

Defendant World Marine Offshore A/S (World Marine) is a Danish shipping company providing cost-effective, safe, and efficient offshore crew and cargo-transfer services.  *Id.* ¶ 16.  Defendant World Marine Offshore LLC (WMO) is a Delaware limited liability company and wholly owned subsidiary of World Marine.  *Id.* ¶¶ 4, 16.  World Marine has provided a wide range of offshore services using a versatile, specialized fleet, particularly a "variety of Crew Transfer

---

[1]    Defendants accept the factual allegations of the Complaint as true solely for the purposes of this Motion and reserve all rights to challenge, defend and refute the factual allegations therein.

Vessels." *Id.* ¶¶ 17-19.  But as a non-U.S. company, World Marine is prohibited, under a statute called the Jones Act, from participating directly in U.S. offshore wind farms.  *Id.* ¶¶ 12, 21.

Defendant Hans Schneider is the CEO of World Marine.  *Id.*  ¶ 7.  Defendant Lars Zøhner is a former CEO of World Marine.  *Id.* ¶ 15.  Defendant Jimmy Kristensen is a World Marine employee and shareholder.  *Id.* ¶¶ 6, 10.

B.   The Parties Pursue Offshore Wind Charters

In 2020, Defendant World Marine and POI—owned by Plaintiff Landry—signed a "Joint Venture Consortium Declaration" and jointly bid to deliver offshore services to a customer called Vineyard Wind, LLC.  *Id.* ¶ 22.  *See also* Ex. 1, Joint Venture Consortium Declaration.  Plaintiff Treadwell's name does not appear in the referenced proposal, and the Complaint contains no allegation that Treadwell was involved in the bid.

Public records show that after bidding on the Vineyard Wind project, Landry formed three limited liability companies in Massachusetts.   On March 3, 2021, he filed a Certificate of Organization for Patriot Offshore Marine Services, LLC (POMS).  *See* Ex. 2.  On August 27, 2021, he filed similar certificates for Patriot Offshore Marine Holding 1, LLC, and Patriot Offshore Marine Holding 2, LLC.  *See* Exs. 3, 4; *see also* Compl. ¶ 25.  Neither Defendants' nor Treadwell's names appear on these documents.

In July of 2021, Vineyard Wind awarded the Offshore Logistics Tender to POMS, Compl. ¶ 29, and the two companies entered a contract on August 10, 2021.  *See* Ex. 5.[2]  Treadwell is not a party to this agreement.

---

[2]   Exhibit 5 contains only the cover and signature pages of the contract to illustrate the parties thereto and the date on which it was entered.  Defendants omit the substantive pages to protect confidential information.  Should the Court require the full contract, Defendants would seek leave to file it under seal.

In August of 2021, POMS signed a Letter of Intent with General Electric (GE) to provide crew-transfer vehicles. *Id.* ¶ 34.  On August 18, 2021, "[World Marine] wire transferred $70,000 USD to POMS and POMS, in turn, made the Initial LOI Deposit to [Gladding Hearn Shipyard]" to build a vessel for Vineyard Wind. *Id.* ¶¶ 37, 43.  World Marine later provided a further $47,500 to this effort. *Id.* ¶ 81(a).

C.    The Parties Formalize Their Agreement

The parties—namely Landry, POI, WMO, and Treadwell—eventually memorialized their plans with four documents Plaintiffs cite yet fail to bring before the Court: a Memorandum of Understanding (MOU) entered into October 15, 2021 (Compl. ¶¶ 70-72, 92, 159, 168, 169, 175, and 181), and three "operating agreements" or "Interim Operating Agreements" concerning certain jointly formed entities (Compl. ¶¶ 73, 90, 108, 159, 168, 175, 181), entered into on November 9, 2021.  Defendants provide them as Exhibits 6, 7, 8, and 9.  Landry executed the MOU REDACTED

████████████████████████ *See* Ex. 6  at 1.

The parties entered into the ████████████ REDACTED ████████████

████████████████████████████████████ Ex. 6 at 1.  The

parties agreed ████████████ REDACTED ████████████

████████████████████████ *Id.*

The MOU explains the general roles of each party. ██████ REDACTED ██████

████████████████████████ *Id.* ¶ 8(d). REDACTED

████████████████████████████████████

████████████████████ *Id.* ██████ REDACTED ██████

████████████████████████████████████

████████████████████ *Id.*

The MOU makes clear its provisional and aspirational nature.  It ██████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ and expressly provides that

████████████████████████ REDACTED ████████████████████████████

████████████████████████ *Id.* at 5.

Rather, the parties agreed ████████████ REDACTED ████████████

████████████████████████████████████████████████████████████████████████

*Id.* (emphasis added).  ████████████ REDACTED ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 11.  The binding clauses also include:

████████████████████████ REDACTED ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

*Id.* ¶ 12 (emphasis added).  The parties also agreed to a binding non-competition clause that applied

████████████ REDACTED ████████████ *Id.* ¶ 14.  ████████ REDACTED ████████

████████████████████████████████████████████████████████████████████████

*Id.* ¶ 15(a).  In that event, the only provisions that would survive such termination were

████████████████████████ REDACTED ████████████████████████

████████████████████████████████████████████████ *Id.* ¶ 15(b).  As its label

suggests,  ████████████████████ REDACTED ████████████████████

████████████████████████████████████████████████████████████████████████

---

[3] ████████████████████████ REDACTED ████████████████████████

████████████████████████████████████████████████ *Id.* ¶ 13.

███████████ **REDACTED** ███████████

████████████████ *Id.* ¶ 20 (emphasis added).

On November 9, 2021, about three weeks after they entered the MOU, the parties to the MOU entered "interim" operating agreements for Patriot Holdings LLC 1, Patriot Holdings LLC 2, and Patriot Offshore Marine Services LLC.  Compl. ¶ 92.  *See also* Exs. 7, 8, 9.  They were drafted by Treadwell.  Compl. ¶ 73.  Each interim operating agreement has an identical Article IV, which provides:



Exs. 7, 8, 9.

The three interim operating agreements also provided that, ████ **REDACTED** ████ ██████████████████████████ Exs. 7, 8, 9, § 5.2.

    D.   <u>The Parties Further Pursue Offshore Charter Work</u>

Defendant Zøhner, Plaintiff Landry, and Stephen Jones signed a contract with GE Renewable Energy US on November 24, 2021.  Compl. ¶ 97; *see also* Ex. 10.[4]  That contract

---

[4]   Exhibit 10 contains only the cover and signature pages of the contract to illustrate the parties thereto and the date on which it was entered.  Defendants omit the substantive pages to protect confidential information.  Should the Court require the full contract, Defendants would seek leave to file it under seal.

identifies "owners," *i.e.*, the party to provide vessels to be chartered, as "Patriot Offshore Marine Services LLC." *Id.* at 1. On the signature page, Landry is identified as "CEO Patriot Offshore Marine Services," Zøhner as "CEO World Marine Offshore A/S," and Jones as simply "President." *Id.* at 4.

      E.      Plaintiffs Propose Changes to Commercial Terms and the Addition of New Parties, and Defendant World Marine Terminates its Participation

Approximately one month after the parties' MOU, Hans Schneider replaced Zøhner as CEO of World Marine. Compl. ¶ 102. Over the course of the next several weeks, the parties discussed various potential financing options and business arrangements by which the project might proceed, and on January 6, 2022, Treadwell and Landry proposed to bring two new entities, Guice Offshore and Amber Infrastructure, into the proposed business. *Id.* ¶¶ 103-35. On January 12, 2022, Treadwell and Landry told World Marine that they had signed a letter agreement with Guice and Amber, and asked World Marine to sign their agreement. *Id.* ¶ 144.

Instead, Schneider told Treadwell and Landry that "he believe[d] the proposals for financing that were presented were far away from what ha[d] been the foundation of any agreements between the parties and that the setup was too complicated." *Id.* ¶ 146. The next day, January 13, 2022, World Marine invoked **REDACTED** and concluded its involvement in the POMS effort. *Id.* ¶ 150; Ex. 11, Termination Notice.

## II.    Argument

Sophisticated commercial parties voluntarily, and with open eyes, decided to pursue offshore wind business together. As their mutual efforts evolved, and to avoid misunderstanding, they agreed to set out in writing an outline of their goals while making clear that they were not committing to achieve those goals, and *expressly* agreed that any one of them could withdraw from

the effort at any time.  Such risk taking is a fundamental, routine part of commerce, and World Marine violated no right of Plaintiffs' in withdrawing as they agreed any of them could.

A.    Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Although for the purposes of a motion to dismiss the Court will accept as true all of the factual allegations in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

"In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the complaint, annexed exhibits, documents referenced but not attached to the complaint, and matters subject to judicial notice, such as public records." *Ross v. Deutsche Bank Nat. Tr. Co.*, 933 F. Supp. 2d 225, 229 (D. Mass. 2013) (citing *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 12 (1st Cir. 2004)).

B.    Count I (Breach of the Implied Duty of Good Faith and Fair Dealing) Must be     Dismissed Because it is Contradicted by the Terms of the Contract

The covenant of good faith and fair dealing is implied in all contracts "to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). However, "[t]he covenant may not . . . be invoked to create rights and duties not otherwise provided

for in the existing contractual relationship." *Id.* "The duty of good faith and fair dealing concerns the manner of performance," and "is preserved so long as neither party injures the rights of another to reap the benefits prescribed by the terms of the contract." *Id.* (citations omitted). Put another way, "[t]he scope of the covenant is only as broad as the contract that governs the particular relationship." *Ayash v. Dana-Farber Cancer Inst.,* 443 Mass. 367, 385 (2005); *see also Guldseth v. Fam. Med. Assocs. LLC*, 45 F.4th 526, 537 (1st Cir. 2022).

The Complaint is notably light on explanation of just how Defendants are supposed to have breached the implied covenant. At bottom, Plaintiffs' Complaint rests on the fact that World Marine pulled out after the parties together put substantial effort toward charter contracts with others. But that is insufficient as a matter of law to support a claim for breach of the covenant, for two reasons. First, the parties expressly agreed that any of them could terminate their participation, in their **REDACTED** Ex. 6 ¶ 12 **REDACTED**. Second, they expressly agreed that none of the substantive commercial terms were binding. *Id.* at 5. Thus, neither Defendants' decision to terminate the arrangement nor the manner in which Defendants pursued the agreed aspirational goals can, as a matter of law, support Count I.

### 1. *The Parties Agreed to Give Each Other "Sole Discretion" to Withdraw*

The Complaint, and the agreement it incorporates by reference, make plain that all parties agreed in mid-October, 2021, that any of them could walk away " **REDACTED** " requiring only the service of a **REDACTED** to that effect. Ex. 6 ¶ 12. **REDACTED** *See* Exs. 7, 8, 9, § 4.2. Thus, Defendants' exercising their agreed right to terminate cannot, as a matter of law, support a claim

for breach of the implied covenant of good faith. The Court should reject Count I's attempt to rewrite the parties' contract to impose an obligation it clearly does not contain.

The First Circuit has specifically rejected similar attempts, under Massachusetts law, to use the covenant to "inject terms the parties could've included but chose not to." *Guldseth*, 45 F.4th at 538. In *Guldseth*, a doctor sued when he was terminated from a medical practice after two years, despite his expectation, based on pre-contract discussions, that his employment would eventually lead to partnership. *Id.* at 531-33. That contract, like the contract at issue here, was integrated. *See id.* at 532; Ex. 6 ¶ 20 ▮REDACTED▮). The disappointed doctor claimed, among other things, that the partnership breached the covenant by terminating him. *Guldseth*, 45 F.4th at 532. The Court made short work of this argument, noting that the contract "explicitly gives FMA the option to terminate Dr. Guldseth's employment without cause at any point in the first twenty-four months of the relationship." *Id.* at 538. Simply put, the covenant "isn't a prophylactic for contractor's remorse." *Id.*

This Court should do the same here. In October and November 2021, sophisticated parties entered into agreements, including three interim operating agreements drafted by Plaintiff Treadwell, Compl. ¶ 73, that expressly allowed any party to terminate its participation, in its sole discretion, with no limit as to time or circumstances. World Marine exercised its termination right in January 2022, about two and a half months after the parties agreed that any of them could do so. The parties could have limited the termination right by, for instance, requiring it to be exercised before they had entered into charter agreements with third parties. But the black letter of the contract shows they did not. In fact, they agreed to grant each other unfettered walk-away rights after POMS had already entered into one charter contract. *Compare* Compl. ¶ 37 (alleging POMS charter-party contract with Vinyard Wind on August 12, 2021) *with* Compl. ¶¶ 70-71 (alleging

execution of MOU on October 15, 2021) *and* Ex. 6 at 1.  Because Plaintiffs' covenant claim is a futile and unactionable expression of contractor's remorse, Massachusetts law requires dismissal.

### 2. The Parties Agreed That the Substantive Commercial Terms Were Aspirational and Not Binding

The covenant claim is faulty for a second, related reason: the parties agreed that the commercial terms of their MOU were purely aspirational and that none were binding.  Thus, Plaintiffs cannot save this claim by raising complaints about the manner of Defendants' performance of those aspirational terms, as opposed to World Marine's decision to exercise its termination rights.  A failure to meet the MOU's non-binding aspirational terms cannot, as a matter of law, give rise to a covenant claim, because the covenant attaches only to contractual obligations and cannot be used as a vehicle to vary contract terms.

"Interpretation of a contract is ordinarily a question of law for the court."  *Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 44 (1st Cir. 2013).  Under Massachusetts law, a claimed breach of the covenant that would, as here, contradict the black-letter terms of the contract cannot support a claim.  *See Eigerman v. Putnam Invs., Inc.*, 450 Mass. 281 (2007); *Chokel v. Genzyme Corp.*, 449 Mass. 272, 278 (2007).  In *Eigerman*, a disappointed employee alleged his employer violated the covenant by "intimidat[ing] him . . . into surrendering his contractual right . . . to tender his vested shares for redemption."  450 Mass. at 284, 287.  But the plaintiff employee overlooked other language in the controlling agreement providing that the defendant had "no obligation to purchase" shares tendered by an employee.  *Id.* at 286.  The Supreme Judicial Court affirmed the trial court's dismissal for failure to state a claim because the "covenant does not supply terms that the parties were free to negotiate, but did not . . . nor does it create rights and duties not otherwise provided for in the contract . . ."  *Id.* at 289 (citations and internal quotation marks omitted).  Plaintiff's

"reasonable expectations" could not have been violated when the agreement provided that the employer had no obligation to purchase his shares.  *Id.* at 287-88.

*Chokel* is similarly instructive.   In *Chokel*, a disappointed shareholder argued that Defendants breached the covenant of good faith and fair dealing by timing a stock transaction to occur when the stock was undervalued.  449 Mass. at 273.  But the governing contract had no provision dictating the timing of the transaction, and it expressly authorized the Defendants to undertake it "at any time."  *Id.* at 277.  The Supreme Judicial Court affirmed the trial court's dismissal under Massachusetts R. Civ. P. 12(b)(6) because Plaintiff's covenant theory would "create an expectation beyond [the contract's] terms . . . ."  *Id.*

This case is on all fours with *Eigerman* and *Chokel*.  The parties agreed that the first 10 sections of the MOU—including the key commercial provisions—were merely ████████ REDACTED and that REDACTED in those sections ████████ REDACTED ████████ Ex. 6 at 5.  Any alleged defects in Defendants' "manner of performance," *Uno Restaurants, Inc.*, 441 Mass. at 385, of their objective to ████████ REDACTED ████████ Ex. 6 ¶ 1, cannot breach the covenant because the parties expressly disclaimed the intent to *require* any such performance at all.  So too with the provisions concerning REDACTED ████████ *id.* ¶ 4, REDACTED, *id.* ¶ 5, meeting REDACTED ████████ *id.* ¶ 6, REDACTED, *id.* ¶ 7, or the REDACTED ████████ outlined in *id.* ¶¶ 8-10.  The manner in which the parties allegedly failed to meet any of these MOU objectives is irrelevant, because they made clear that they actually committed to none of them.

The parties expressly agreed that none of these specific REDACTED constituted REDACTED *Id.* at 5.  While the

implied duty of good faith requires parties to act consistently with the contract, inaction "amounts to a lack of good faith in contract performance only when the contracting party had a duty to act." *Uno Restaurants, Inc.*, 441 Mass. at 386.  Thus, the manner in which Defendants accomplished, or even failed to accomplish, an aspirational goal is simply irrelevant to a claimed breach of the implied covenant where there was no contractual obligation to perform in the first place.  *Cf. Lafayette Place Assocs. v. Bos. Redev. Auth.*, 427 Mass. 509, 526 (1998) (holding that refusal to extend deadline "could not constitute bad faith, because the [defendant] had no contractual duty to grant the extension that [plaintiff] sought").

Thus, having expressly agreed that World Marine was bound to do none of the foregoing, Plaintiffs cannot invoke "good faith and fair dealing" as the basis of a claim about the manner in which World Marine failed to do what all parties agreed it did not have to do.

C.     Count II (Breach of Fiduciary Duty) Should Be Dismissed Because Plaintiffs Fail to Identify Any Fiduciary Duty Owed Defendants or How Any Such Duty Was Breached

To maintain a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary duty arising from a relationship between the parties, a breach of that duty, damages, and a causal relationship between the breach and the plaintiff's damages.  *Qestec, Inc. v. Krummenacker*, 367 F. Supp. 2d 89, 97 (D. Mass. 2005).

Plaintiffs have not alleged that a relationship existed between the parties that gave rise to a fiduciary duty.  "Joint venturers owe one another substantially the same fiduciary duties as are owed by partners to one another."  *Zimmerman v. Bogoff*, 402 Mass. 650, 660 (1988).  Here, the parties entered into the MOU **REDACTED**  Ex. 6 at 1.  Thus, the proposed joint venture never materialized.  As the MOU made clear, none of the signatories was under any obligation to any other signatory to consummate or finalize a transaction or to continue to pursue

the transactions envisioned in the MOU.  *Id.* ¶ 12.  Without the actual formation of the proposed joint venture between World Marine and the Plaintiffs, there existed no fiduciary relationship between them.

Nor is Plaintiffs' conclusory assertion that Defendants induced them to enter into the MOU and interim operating agreements sufficient to state a claim for breach of fiduciary duty. Generally, a claim for breach of fiduciary duty need only comply with the notice standards of Rule 8 of the Federal Rules of Civil Procedure.  *See Lawson v. Affirmative Equities Co., L.P.*, 341 F. Supp. 2d 51, 67 (D. Mass. 2004).  However, where the claim of breach is based on fraud or alleges an intentional breach, it must satisfy the more rigorous standards of Rule 9(b).  *See Taylor v. Ford Motor Co.*, No. 06-69-B-W, 2006 WL 2228973, at *3 (D. Me. 2006); *Sachs v. Sprague*, 401 F. Supp. 2d 159, 170 n.15 (D. Mass. 2005).  Plaintiffs' inducement theory is insufficient under either pleading standard.

To the extent that Plaintiffs' claim is based on fraud or an intentional breach of fiduciary duties, they must allege specifically the nature of the fiduciary relationship between them and the Defendants; where or how that fiduciary relationship arose; the manner in which each of the Defendants intentionally or fraudulently breached one or more fiduciary duty; and the manner in which those intentional or fraudulent breaches caused damage to the Plaintiffs.  The complaint contains no such specific allegations.  *See, e.g.*, *Taylor*, 2006 WL 2228973 at *3; *Sachs*, 401 F. Supp. 2d at 170.

Even if the Court does not apply the heightened standard, the Complaint fails to meet even the notice pleading requirement of Rule 8(a).  Plaintiffs lump together the five defendants and claim that they collectively breached fiduciary duties without so much as identifying those alleged duties.  Compl. ¶¶ 169-70.  These basic failures should result in dismissal of Count II.

The closest Plaintiffs come to specificity is to allege that Defendant Zøhner's "actions and statements as then CEO of [World Marine] instilled trust and confidence in Landry and TFIC to enter into the MOU and POMS with [World Marine]." Compl. ¶ 169. Plaintiffs seem to suggest that, as World Marine's CEO, Zøhner *de facto* imposed a fiduciary duty upon himself simply by being involved in business with Plaintiffs. From there, the Plaintiffs make the leap that "[b]y virtue of their relationship, the Defendants owed fiduciary obligations to the Plaintiffs and POMS." *Id.* ¶ 170. Finally, the Plaintiffs recite that "Defendants breached their fiduciary duties causing the Plaintiffs substantial damages." *Id.* ¶ 171. None of these conclusory allegations suffice.

Massachusetts courts recognize that "business transactions conducted at arm's length generally do not give rise to fiduciary relationships." *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300, 311-12 (1st Cir. 2022) (citing *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995)). To avoid this clear principle, which is fatal to Plaintiffs' claims, Plaintiffs instead claim that a fiduciary duty was owed by all Defendants because Zøhner's actions "instilled trust and confidence" before the Parties entered into the MOU. Compl. ¶ 169. But the facts alleged do not support this claim. The mere fact that the Plaintiffs placed "trust and confidence" in Zøhner because he was the CEO of World Marine does not establish a fiduciary duty on the part of Zøhner, much less on the part of the other defendants. *Id.; see Ahsan v. Homebridge Fin. Servs, Inc.*, 405 F. Supp. 3d 208, 217 (D. Mass. 2019) ("one party cannot unilaterally transform a relationship into a fiduciary relationship merely by putting absolute trust into the other party.").

Plaintiffs' allegations fall far short of what would be required to establish that this is one of the exceptional cases in which an arm's-length transaction gives rise to a fiduciary duty. Although a fiduciary duty can exist in an arm's-length transaction in the uncommon circumstance where a relationship develops such that "one party reposes its confidence in another," this is not

such a case. *Katz*, 28 F.4th at 312.  To determine if this transformation has occurred, "courts look to the defendant's knowledge of the plaintiff's reliance and consider the relation of the parties, the plaintiff's business capacity contrasted with that of the defendant, and the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Id.* at 313 (quoting *Smith v. Jenkins*, 732 F.3d 51, 63 (1st Cir. 2013)). Here, Plaintiffs' allegations establish that they were sophisticated and experienced parties, actively and personally engaged in an arm's-length transaction, who did not rely on the Defendants for guidance.  For example:

- Plaintiff Landry established POI to build and operate wind farm support vessels and spent a considerable amount of time developing his network.  Compl. ¶¶ 14, 15.

- Landry met the directors of World Marine and worked with World Marine to engage with Plaintiff Treadwell as a potential partner.  *Id.* ¶¶ 24, 31.

- Landry and Defendant Zøhner together signed a letter of intent to engage with a vessel designer and shipyard to complete engineering and design work.  *Id.* ¶ 36.

- Landry traveled with Defendant Kristensen to conduct client development and other meetings.  *Id.* ¶ 42.

- Third parties who were interested in the transaction as investors presented themselves to both Landry and World Marine.  *Id.* ¶ 52.

- Landry and Treadwell both had discussions with Zøhner about the potential effects of a change in control or ownership in World Marine.  *Id.* ¶ 60.

- Both the Plaintiffs and World Marine signed the MOU, with all three parties as owning members of POMS.  *Id.* ¶ 70.

- After the signing, the Plaintiffs took action to raise necessary equity capital and bank financing.  *Id.* ¶ 72.

- Treadwell drafted operating agreements, submitted financial statements for credit review, and executed guarantees.  *Id.* ¶¶ 73, 75, 76.

- Treadwell provided the finance offering document and the financing model for dissemination to lenders and investors.  *Id.* ¶ 79.

- Treadwell established an online due diligence database to be accessed by lenders and investors. *Id.* ¶ 80.

- Treadwell led video conference calls between the Plaintiffs and the Defendants in connection with the transaction. *Id.* ¶¶ 91, 93.

- The Plaintiffs conducted virtual meetings with World Marine where Plaintiffs provided detailed overviews of the status of financing. *Id.* ¶ 103.

Plaintiffs' own allegations establish that Landry and Treadwell were sophisticated and experienced parties engaged in complex business transactions with multiple parties in the wind farm space. Plaintiffs' bare recitation of the language of instilling trust and confidence, without alleging *facts* showing how this relationship was anything more than an arm's-length negotiation, is insufficient to plausibly allege they "repose[d] 'faith, confidence, and trust in [Defendants'] advice.'" *See Traverse v. Gutierrez Co.*, No. 18-CV-10175-DJC, 2019 WL 3082828, at *5 (D. Mass. July 15, 2019) (quoting *Doe v. Harbor Sch., Inc.*, 446 Mass. 245, 253 (2006)).

      D.      Count III (Breach of Contract) Should be Dismissed Because Plaintiffs Do Not <u>Allege Defendants Competed in the Business.</u>

To state a claim for breach of contract, Plaintiffs must allege that "there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020) (quoting *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016)). The interpretation of a contract is a question of law amenable to resolution on a motion to dismiss. *See Eigerman*, 450 Mass. at 287. Where the contract's language is clear and unambiguous, the court will construe those terms in "their usual and ordinary sense" and without consideration of parol evidence. *Gen. Convention of New Jerusalem in the U.S. of Am., Inc. v. MacKenzie*, 449 Mass. 832, 835-36 (2007). "[A] court generally will accord no deference to a party's interpretation of a contract but, rather, will focus on the language of the instrument to effectuate its terms."

*MacDonald v. Jenzabar, Inc.*, 92 Mass. App. Ct. 630, 634 (2018) (quoting *Balles v. Babcock Power, Inc.*, 476 Mass. 565, 571 n.12 (2017)).

Plaintiffs' claim that Defendants violated the MOU's noncompete provision when they allegedly negotiated with Foss Maritime (Foss), Compl. ¶¶ 173-75, is insufficient to state a claim for two reasons.  First, Count III should be dismissed insofar as it purports to asset a claim against the individual defendants because Zøhner, Schneider, and Kristensen are not parties to the noncompete agreement.  More fundamentally, the noncompete agreement does not prohibit—and in fact expressly permits—negotiations as described in the complaint.

> 1. *The MOU and interim operating agreements prohibit competition in the provision of maritime logistics services in the United States and its territorial waters.*

The MOU includes a noncompete provision that applies to the Parties and their subsidiaries
REDACTED Ex. 6 ¶ 14.  In relevant part, the noncompete
provides that no Party or its subsidiary shall  REDACTED

REDACTED *Id*. The Territory and the Business

are defined in paragraph 1:


REDACTED

*See id*. ¶ 1.

The MOU also contains an exclusivity provision stating that the Parties ███████████

███████████████████ *Id.* ¶ 13.  If a third party were to contact any of the Parties, the

MOU requires that Party to ███████████████REDACTED███████████████

████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ███████████

████████████████████████████████████████████████████

████████ *See* Exs. 7, 8, 9, § 7.1.

> 2. *Plaintiffs cannot state a claim for breach of the non-competition agreement
> against defendants who are not parties to that contract.*

Plaintiffs cannot state a claim for breach of contract against the individual defendants when

none of them were parties to the MOU or interim operating agreements and thus were not bound

by those agreements.  The MOU is an agreement between World Marine A/S, Landry, and

Treadwell.  *See* Ex. 6 at 1, 9.  So too with the interim operating agreements, which were executed

by Landry, entities controlled by Landry, World Marine, and (in one instance) Treadwell.  *See*

Exs. 7, 8, 9.  Zøhner signed those agreements, but only in his capacity as the CEO of World Marine.

*See* Exs. 7, 8, 9; *Grease Monkey Int'l, Inc. v. Ralco Lubrication Servs., Inc.*, 24 F. Supp. 2d 120,

124 (D. Mass. 1998) (finding president and individual guarantor not personally bound by covenant

not to compete).  The breach of contract claim against Zøhner, Schneider, and Kristensen must

therefore be dismissed.

> 3. *Plaintiffs cannot state a claim for breach of the non-competition agreement
> where World Marine did not engage in the Business and followed the express
> provisions of the MOU.*

Count III should also be dismissed against World Marine because, even assuming the

factual allegations of the complaint are true, World Marine did not breach its noncompete

18

agreement with Landry and Treadwell.  To the contrary, World Marine behaved in precisely the manner required by its agreement with Plaintiffs.

The MOU exclusivity provision required World Marine to immediately inform Landry and Treadwell if a third party sought to participate in any role in the proposed joint venture.  *See* Ex. 6 ¶ 13.  And so, when Foss Maritime expressed interest in acquiring shares of World Marine, Zøhner promptly informed Landry of that contact on October 29, 2021.  Compl. ¶ 82.  Zøhner kept Landry apprised of developments and suggested in December 2021 that he participate in a meeting with Foss to discuss a potential equity investment.  *Id.* ¶ 113.  At Landry's request, Schneider (by then the CEO of World Marine) was also brought into the discussion.  *Id.* ¶¶ 119-22, 127-28.  According to the Complaint, Landry, Treadwell, and World Marine ultimately decided not to pursue a potential partnership with Foss.  *Id.* ¶¶ 131-32.  The next month, Foss contacted World Marine with a Notice of Interest and Schneider, again, promptly informed Landry and Treadwell.  *Id.* ¶ 146.  Schneider also forwarded an email from Foss referencing a "conceptual joint venture partnership."  *Id.* ¶ 149.  Because that email allegedly did not address "the context" of the initial presentation made at the parties' joint meeting with Foss, Landry and Treadwell apparently conclude that it "was abundantly clear that World Marine was going into partnership with Foss without Landry or [Treadwell]."  *Id.* ¶ 149.  World Marine withdrew from the MOU the following day.  *Id.* ¶ 150.

Even taking the factual allegations of the complaint as true, Landry and Treadwell have not plausibly alleged that World Marine breached the noncompete agreement.  At most, Plaintiffs imply that World Marine engaged in some unspecified side negotiations with Foss and that there was a "conceptual joint venture partnership" between World Marine and Foss.  *Id.* ¶ 149.  Notably, the Complaint does not allege that World Marine ever entered into an agreement with Foss.

19

Nothing in the MOU prohibits World Marine from negotiating with Foss.  Preparing to compete is not itself a breach of a noncompete agreement.  *See Sea Tow Services Int'l, Inc. v. Tampa Bay Marine Recovery, Inc.*, No. 20-CV-2877(JS)(SIL), 2022 WL 5122728, at *16 (E.D.N.Y. Sept. 30, 2022) (finding allegation that defendants formed intention to violate noncompete agreement too speculative to state claim for breach of contract).  The plain language of the noncompete agreement prohibits only competing in the ███REDACTED███ which is defined in paragraph 1 of the MOU.  *See* Ex. 6 ¶ 1.  Plaintiffs do not—and cannot—allege that World Marine engaged in the provision of maritime logistics services in the United States or its territorial waters in violation of the noncompete agreement.  For example, there is no allegation that World Marine deployed any service vessels to the United States, that World Marine repaired or maintained any offshore wind farms in the territorial waters of the United States, or that World Marine transferred personnel to any offshore wind farms in those waters.  Plaintiffs do not allege that World Marine ever competed in the Business with Foss or any other entity.

To the contrary, Plaintiffs' allegations establish that World Marine behaved precisely as contemplated by the parties.  The MOU does not prohibit contact from third parties regarding POMS or the business.  Indeed, Landry acknowledges that he too met with representatives of Foss without World Marine.  *See* Compl. ¶¶ 124-25.  Rather, the MOU expressly contemplates that third parties might be interested in participating in the Business and provides that such communications be immediately *disclosed* to the other Parties.  *See* Ex. 6 ¶ 13.  That is precisely how World Marine handled communications from Foss.  Landry and Treadwell allege that Foss approached World Marine or its employees on three occasions.  On each of those occasions, the appropriate employee promptly advised Landry or Treadwell and brought them into the relevant discussions.  *See* Compl. ¶¶ 82, 113, 146.  Plaintiffs cannot state a claim for breach of contract

based on allegations that show World Marine acted in accordance with the express requirements of that contract at every turn.

E.    Plaintiffs' Claims of Fraud (Counts VI) and Fraudulent Inducement (Count IV) Should Be Dismissed Because Plaintiffs Fail to Allege Fraud with the Specificity That Is Required Under Fed. R. Civ. P. 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleading must specify "what the underlying misrepresentation was, who made it, and when and where it was made." *Katz*, 28 F.4th at 308 (citation omitted). The complaint must particularly state "the time, place, and content of an alleged false representation." *United States ex. rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 13 (1st Cir. 2016) (citation omitted). Conclusory allegations are insufficient to pass muster under Rule 9(b). *Id*. A basic recitation of the elements of fraud or general statements regarding the condition of the mind or plans and schemes are inadequate. *See Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013). The purpose of the particularity requirement is to provide the defendant with "notice of the grounds on which plaintiff's fraud claim rests" and "enable them to prepare meaningful responses . . . ." *Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 39 (1st Cir. 2019). The Rule 9(b) standard applies whether the claim is called "fraud in the inducement" or just plain "fraud." *See N. Am. Catholic Educ. Programming Found., Inc.* v. *Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (applying F. R. Civ. P. 9(b) to dismiss claim for "fraud in the inducement").

Plaintiffs' references to "statements" that allegedly "induced" Plaintiffs to enter into agreements, and that those "statements" by "Defendants" were "false and misleading because Defendants never intended to be involved with POMS," are generalized vague conclusions insufficient to state a claim for relief. Compl. ¶¶ 180-82. First, as pled, Plaintiffs rely on their contention that *some* statements Defendants made were true to prove that *some* statements

Defendants made were false.  But even setting aside the shaky logic of this premise, Plaintiffs fail to specify which statements are misleading and which ones are not.  *See id.* ¶ 109 ("Clearly *either* Zøhner was lying *or* [World Marine] and Schneider were lying" [emphasis added]).  Second, simply stating that World Marine, or any of the other named Defendants, did not intend to be involved with POMS does not meet Rule 9(b)'s heightened scrutiny standard.  Plaintiffs allege no facts that would make it plausible to conclude that Defendants entered into agreements with Landry and Treadwell for the purpose of ultimately consummating a business relationship with other US maritime companies.  *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) (dismissing claims that did not provide "supporting facts regarding the circumstances surrounding the formation of the conspiracy to defraud plaintiffs"); *N. Am. Catholic Educ.,* 567 F.3d at 13 (dismissing fraudulent inducement claim that Defendants "never intended to follow its business plan" because the "assertion is not . . . supported with particulars that suggest scienter.").  This hypothetical inference of fraud is insufficient for Rule 9(b).  *See Kelly*, 827 F.3d at 13.

Moreover, First Circuit law prohibits the Plaintiffs from attempting to *infer* fraud based on their own assumptions regarding the Defendants' collective state of mind.  *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996).  Plaintiffs allege that the unspecified fraudulent statements or omissions were made by the Defendants "for the purpose of inducing the Plaintiffs to engage in pursuing the contracts that were awarded as the Defendants could not so *[sic]* on their own." Compl. ¶ 192.  They also allege that "[u]pon information and belief, [World Marine] withdrew from POMS to specifically pursue opportunities with Foss and other US Maritime companies in direct opposition of the MOU and Interim Operating Agreements."  *Id.*  ¶ 159.  These allegations regarding the Defendants' intent while engaging in a purported fraud are insufficient under Rule 9.  *See Doyle*, 103 F.3d at 194.

In a final superficial allegation, while the Plaintiffs claim that the "Defendants lied to the Plaintiffs," Compl. ¶ 194, they again fail to specify which of the individual Defendants verbalized the alleged lies, when those alleged lies were made, what exact statements were uttered, and where those statements were uttered. *See Katz*, 28 F.4th at 308.

First Circuit law is clear: specificity in allegations of fraud is a basic pleading requirement under Rule 9(b). *See Katz*, 28 F.4th at 308; *Woods*, 733 F.3d at 358. Plaintiffs' failure to meet these minimum pleading requirements does not give the Defendants notice of the specific fraudulent statements or omissions underlying the fraud claims or to prepare meaningful responses to those claims. *Dumont*, 934 F.3d at 39. Counts IV and VI should therefore be dismissed under Rule 9(b) for failure to plead with specificity the circumstances constituting the alleged fraud.

    F.    Plaintiffs' Claims for Tortious Interference with a Contractual Relationship (Count V) Must Be Dismissed.

To state a claim for tortious interference with a contractual relationship, a Plaintiff must allege "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991).

Here, Plaintiffs' tortious interference claim alleges that Defendants were aware of the contracts POMS had with GE and Vineyard Wind, and that "Defendants intentionally and maliciously interfered with those contracts for the purpose of harming POMS for the benefit of [World Marine]." Compl. ¶¶ 187-88. According to the Complaint, this supposed "interference" occurred when World Marine decided to withdraw from POMS. The Complaint alleges that "as a result of WMO's actions, GE canceled its contract [with POMS] for two CTVs" and "POMS had to liquidate the [Vineyard Wind] contract for one CTV." Compl. ¶¶ 157-58. Those two events,

according to the Complaint, allegedly caused Plaintiffs to suffer certain downstream financial losses.   Compl. ¶ 160; *see also* Compl. ¶ 189.   As explained below, these allegations are insufficient to support a tortious interference claim against any of the Defendants.

As a threshold matter, the Complaint fails to allege that any Defendant ever intentionally interfered with any of *Plaintiffs'* contractual relationships.   To the contrary, Defendants are accused only of intentionally interfering with contracts between *POMS* and GE and *POMS* and Vineyard Wind.   *See* Compl. ¶¶ 187-88.   But POMS is not a plaintiff in this matter, and neither Landry nor Treadwell are parties to the contracts allegedly subject to Defendants' purported interference.   Accordingly, even if any intentional interference with those two contracts occurred, Plaintiffs lack standing to assert any damages claim arising from such conduct.   *See Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 87 Mass. App. Ct. 296, 303 (2015) (affirming dismissal of tortious interference with contract claims where plaintiff "was not a party to any of the contracts with which the defendants allegedly interfered.").   Nor does the Complaint allege facts sufficient to support a claim that any Plaintiff was an intended third-party beneficiary of those two contracts.   *Id.* at 303 n.10 (declining to reach the issue of whether an alleged third-party beneficiary of a contract may assert a claim for tortious interference with contractual relations).

Even if Plaintiffs have standing to assert an intentional interference claim based on Defendant's conduct vis-à-vis these two contracts, the claim should still be dismissed.   The Complaint contains no non-conclusory allegation that World Marine or any of the other Defendants ever intended for either GE or VW1 to break its contractual relationship with POMS, let alone allegations that Defendants ever intended their conduct to cause damage to Plaintiffs.   To the contrary, the Complaint specifically alleges that World Marine terminated the MOU in order to pursue other business opportunities.   *See* Compl. ¶ 159 (alleging that "World Marine withdrew

24

from POMS to specifically pursue opportunities with Foss and other Maritime companies"). Nothing in the Complaint suggests that Defendants ever took steps that prevented GE, Vineyard Wind, or POMS from proceeding with any of their existing contractual relationships. This failure to plead that Defendants ever "knowingly induced" GE or Vineyard Wind to terminate their contracts with POMS is fatal to Plaintiffs' claim for tortious interference. *See Blixeth v. Byrne*, 214 F. Supp. 3d 97, 105 (D. Mass. 2016) (dismissing tortious interference claim where plaintiff failed to allege that Defendant "prevented [a party to the contract] from doing anything."); *see also Draghetti v. Chmielewski*, 416 Mass. 808, 816 (1994) (a defendant must "knowingly induce" a breach of contract).

As explained above, *see supra* § II(D), World Marine's withdrawal from the MOU and from POMS was wholly consistent with its express rights under the MOU. *See* Ex. 6 ¶ 12. A party's exercise of its valid contractual rights cannot constitute an "improper means" for the purposes of a tortious interference claim. *Skyhook Wireless, Inc. v. Google, Inc.*, 86 Mass. App. Ct. 611, 622 (2014) (defendant's exercise of its contractual rights "did not constitute improper means" for purposes of a tortious interference claim); *accord Tersley Invs. Ltd. v. Great Hill Partners*, No. 2084-CV-02333, 2021 WL 6246587, *7 (Mass. Super. Ct., Oct. 20, 2021) (defendant's exercise of a contractual right could not support a claim for tortious interference). Accordingly, Plaintiff's contention that World Marine's decision to withdraw from the MOU amounted to tortious interference is invalid.

Finally, assuming *arguendo* that World Marine withdrew from the POMS effort "to specifically pursue opportunities with Foss and other US maritime companies," Compl. ¶ 159, such a purpose is not "improper" for the purposes of alleging a tortious interference claim. Massachusetts courts have consistently held that a defendant acting to advance its own economic

interests is not acting with an "improper purpose."  *See Am. Paper Recycling Corp. v. IHC Corp.*, 707 F. Supp. 2d 114, 122 (D. Mass. 2010); *see also Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*, 62 Mass. App. Ct 34, 39 (2004) ("That the plaintiff may have suffered a loss as a consequence of the defendant's pursuit of its own interest is a by-product of a competitive marketplace; it does not render the defendant's effort tortious").  Plaintiffs' allegations regarding Defendants' decision to withdraw from POMS fall well short of alleging that Defendants acted with any improper motive or means.  *See ADH Collision of Bos., Inc. v. Wynn Resorts, Ltd.*, No. 19-CV-10246-RGS, 2020 WL 3643509, at *3 (D. Mass July 6, 2020) (rejecting tortious interference claim where there was no evidence that defendant "misrepresented any facts, defamed anyone, indicated an intent to harm [plaintiff] or exhibited any motive other than to benefit itself financially").  For that additional reason, Plaintiffs' tortious interference claim cannot survive.

G.    Plaintiffs' Negligent Misrepresentation Claim (Count VII) Must Be Dismissed.

In order to state a claim for negligent misrepresentation, Plaintiffs must allege (1) that Defendants were acting "in the course of their business, profession, or employment, or in any other transaction which they had a pecuniary interest," (2) that Defendants supplied false information for the guidance of Plaintiffs in their business transactions (3) without exercising reasonable care or competence in obtaining or communicating the information, (4) that Plaintiffs justifiably relied on the information, and (5) that Plaintiffs' justifiable reliance caused them to suffer pecuniary loss. *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471-72 (2009).  "Mere silence or nondisclosure generally does not create an actionable misrepresentation.  Silence, however, 'may be actionable where the relationship of the parties creates a particular legal or equitable obligation to communicate all the facts.'"  *Masso v. United Parcel Serv. of Am., Inc.*, 884 F. Supp. 610, 616 (D. Mass. 1995) (quoting *DeMarco v. Granite Savings Bank*, 1993 WL 220551, at *2 (Mass. App. Ct. June 11, 1993)).

Here, Plaintiffs broadly allege that Defendants committed the tort of negligent misrepresentation when they "supplied false information to the Plaintiffs to guide them in their business transaction . . ." Compl. ¶ 198. But the Complaint is devoid of any allegations explaining what that supposed "false information" was. Indeed, the only allegations in the Complaint that might be construed as relating to the provision of "false information" concern the allegedly inconsistent statements regarding Zøhner's authority as Chief Executive Officer to enter into various agreements on behalf of World Marine—the same statements that purport to form the basis of Plaintiffs fraud claim against Defendants. *See* Compl. ¶ 191; *see also id.* ¶ 109. Thus, at best, Plaintiffs have alleged that Defendant World Marine negligently misrepresented Zøhner's authority to enter various agreements, including the MOU, and that those misrepresentations somehow caused Plaintiffs to suffer pecuniary loss. As explained below, these allegations fall well short of what is necessary to support a claim of negligent misrepresentation under Massachusetts law.

*First*, it is clear that the allegations relating to Plaintiffs' theory of negligent misrepresentation pertain, at most, to the actions of Defendants World Marine, Zøhner, and Schneider. *See* Compl. ¶¶ 108-09. The Complaint contains no allegations suggesting that Defendants World Marine Offshore LLC or Kristensen *ever* made *any* negligent misrepresentations to Plaintiffs that caused Plaintiffs to suffer pecuniary loss. Accordingly, the negligent misrepresentation claim against those two defendants must be summarily dismissed.

*Second*, and more importantly, Plaintiffs are barred from recovering under a claim for negligent misrepresentation against any of the Defendants because of the integration clause contained in the MOU. As discussed above, *see supra* §§ I and II(D), paragraph 20 of the MOU expressly states that ██████████████ REDACTED ██████████████

<span style="background:black">REDACTED</span>

Ex. 6 ¶ 20.  This clause

necessarily insulates Defendants from any legal claims arising out of any supposed negligent misrepresentations that may have occurred during the course of negotiating the MOU.  *See Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 432 (2000) ("To ignore a merger clause and allow recovery for a negligent misrepresentation does little to promote honesty and fair dealing in business relationships").  Indeed, "[w]hile the general rule holds that an integration or exculpatory clause does not provide a valid defense against a fraud claim, Massachusetts courts have found that the public policy concerns motivating this rule are not applicable in the context of negligent misrepresentation."  *Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 573 F. Supp. 3d 513, 543 (D. Mass. 2021).

*Finally*, Plaintiffs' negligent misrepresentation claim fails for another independent reason: the Complaint fails to allege facts to support a contention that the Defendants' alleged negligent misrepresentations ever caused Plaintiffs to suffer any damages.  As discussed above, *see supra* § II(D), World Marine validly terminated the MOU pursuant to paragraph 12 of the MOU. Moreover, the Complaint itself alleges that World Marine's termination of the MOU was not caused by Zøhner's alleged lack of authority, but rather because World Marine allegedly elected to pursue other opportunities with other U.S. maritime companies.  *See* Compl. ¶ 159. Accordingly, even if Plaintiffs had relied upon any supposedly negligent statements regarding Zøhner's authority, those statements could not have caused Plaintiffs to suffer any damages, particularly where the MOU explicitly states that the parties had no obligation to consummate the transactions envisioned therein.  For that additional reason, Count VII should be dismissed.

### III.    Conclusion

Plaintiffs' complaint and the agreements on which it depends show that sophisticated commercial parties agreed to make serious efforts to enter the offshore wind business together, but also agreed that any of them could pull out unless and until they reached a final commercial agreement.  Such arrangements are entirely conventional in the commercial world.  Defendant World Marine breached no right of Plaintiffs by exercising its agreed right to walk away after investing over $100,000 and many months of effort, as Plaintiffs allege.  And the other Defendants are not alleged to have done so either, even under the most generous reading of the Complaint. Following well-established Massachusetts law, the Court should enforce the parties' agreement and dismiss this Complaint.

Dated: December 2, 2022

Respectfully submitted,

WORLD MARINE OFFSHORE A/S and
WORLD MARINE OFFSHORE LLC

By their attorneys,

*/s/ Megan A. Siddall*
Megan A. Siddall
BBO No. 568979
101 Federal Street
Suite 650
Boston, MA 02110
Tel: 617-202-5178
Fax: 617-202-5893
msiddall@msdefenders.com

Patrick O'Donnell
Stephen W. Miller
HWG, LLP
1919 M St. NW
Suite 800
Washington, DC 20036
Tel: 202-730-1300
Fax: 202-730-1301
podonnell@hwglaw.com
smiller@hwglaw.com
*Admitted pro hac vice*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was served by ECF on counsel for the Plaintiffs on December 2, 2022.

*<u>/s/ Megan A. Siddall</u>*
Megan Siddall