# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

MICHAEL LANDRY,
TREADWELL FRANKLIN
INFRASTRUCTURE CAPITAL LLC, and
PATRIOT OFFSHORE MARINE SERVICES,
LLC,

*Plaintiffs,*

v.

WORLD MARINE OFFSHORE A/S, WORLD
MARINE OFFSHORE LLC, LARS CHRISTIAN
ZØHNER, and JIMMY KRISTENSEN,

*Defendants.*

Civil Action No. 22-cv-11432-AK

**Consolidated Memorandum of
Lars Christian Zohner and
Jimmy Kristensen in Support of
Their Motion to Dismiss**

## <u>Introduction</u>

Massachusetts law allows sophisticated commercial parties to agree among themselves to

risk their time and capital on exploring projects that might not come to fruition—and that is

exactly what happened in this case: sophisticated entities embarked on an exploratory venture,

with no obligation to consummate a final deal.[1] Plaintiffs' claims against defendant Lars

Christian Zøhner ("Zøhner"), a former CEO of defendant World Marine Offshore A/S ('WMO"),

and Jimmy Kristensen ("Kristensen"), COO of WMO, (set forth in Counts III – VII) fail because

(a) this Court lacks subject matter jurisdiction over this action because there is no diversity

---

[1] Plaintiffs' theory of the case has changed considerably since they filed their initial complaint on
September 7, 2022. In their first filing, Plaintiffs relied on the alleged breach of the parties'
Memorandum of Understanding as the basis for their claims. But since the Memorandum of
Understanding expressly provided that either side could withdraw from further examining a
proposed relationship, Plaintiffs shifted course, amending their complaint to add a party and
arguing that its claims arise from the breach of that party's operating agreement. This new theory
is equally futile.

between the litigants; (b) this Court lacks personal jurisdiction over Zøhner and Kristensen who are residents of Denmark; (c) Zøhner and Kristensen did not owe a fiduciary duty to the Plaintiffs (Count III); (d) the claims for fraudulent inducement and fraud are not pled with particularity (Counts IV and VI); (e) Zøhner and Kristensen did not owe any duty to Plaintiffs and cannot be liable for tortious interference (Count V); and (f) the integration clause in the relevant agreements bar the misrepresentation claim (Count VII).

## Facts As Alleged[2]

Plaintiff Michael Landry is a Massachusetts resident who "established Patriot Offshore, Inc. ("POI") to build and operate wind farm support vessels." Amended Complaint, Dkt. 40 ("Am. Compl.") ¶¶ 5, 20. Plaintiff Treadwell Franklin Infrastructure Capital LLC ("Treadwell") "was to lead the project financing and assisting in raising capital . . .."[3] Id. ¶¶ 6, 49. Patriot Offshore Marine Services, LLC ("POMS"), is a Massachusetts limited liability company. Id. ¶ 7.

Defendant WMO is a Danish shipping company. Id. ¶¶ 8, 23.[4] Defendant World Marine Offshore, LLC ("WMO LLC") is a Delaware entity and wholly-owned subsidiary of WMO. Id. ¶ 10. WMO provides offshore services using a "variety of Crew Transfer Vessels." Id. ¶¶ 22-27. As a foreign company, WMO cannot participate directly in U.S. offshore wind farms. Id. ¶¶ 17, 30. Zøhner is a former CEO of WMO. Id. ¶ 11. Kristensen is the COO of WMO. Id. ¶ 12.

---

[2] Zøhner and Kristensen accept the factual allegations of the Amended Complaint as true solely for this Motion and reserve all rights to challenge and refute the factual allegations therein.

[3] Plaintiffs wrongfully identify Treadwell as a corporation. Id. ¶ 6. In fact, it is an LLC.

[4] WMO is owned equally by two Danish entities. One of those entities, Exec Invests, is owned by four individuals, including Zøhner and Kristensen. Id. ¶ 9. Exec Invests is not a party to this action, nor is it alleged to have taken actions relevant to this litigation.

*The Parties Pursue Offshore Wind Charters*

In 2020, Defendant WMO and POI (owned by Landry) signed a "Joint Venture Consortium Declaration" to establish a new entity to service the offshore wind industry and provide maritime logistics services. *See* Dkt. 25, Exh. 1.[5] [6] As part of the joint venture, the new entity would submit a bid to deliver offshore services to a third party, Vineyard Wind, LLC. *Id.* ¶ 35. *See also* Dkt. 25, Exh. 1. After bidding on the Vineyard Wind project, Landry formed three new Massachusetts limited liability companies: Patriot Offshore Marine Services, LLC (POMS), Patriot Offshore Marine Holding 1 ("Holding 1"), and Patriot Offshore Marine Holding 2, LLC ("Holding 2"). *See* Dkt. 25, Exhs. 2, 3, 4.[7]  In July 2021, Vineyard Wind awarded the project to POMS, Am. Compl. ¶ 42, and the two companies entered into a contract. *See* Dkt. 25, Exh. 5.[8] WMO provided the initial funds to build a vessel for Vineyard Wind. Am. Compl. ¶¶ 51, 57.

*The Parties Formalize Their Agreement*

Landry, POI, Treadwell, and WMO memorialized their plans with four documents that Plaintiffs cite yet do not bring before the Court: a Memorandum of Understanding (MOU) entered into on October 15, 2021 (Am. Compl. ¶¶ 86-87), and three interim operating agreements

---

[5] The exhibits referred to in this memorandum of law were previously filed under seal in connection with then-defendants' consolidated motion to dismiss. Dkt. 25. Movants refer to those exhibits to avoid a waste of judicial resources by seeking to seal the same exhibits. Where sections from the sealed exhibits are quoted *in toto* in this memorandum, the quote is redacted.

[6] Defendants attach the exhibits to their motion, not to turn this into a summary judgment effort, but to include documents that the Plaintiffs referenced and relied-on in the Amended Complaint. *See Clorox Co. Puerto Rico v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

[7] Neither Defendants' nor Treadwell's names appear on any of the three LLC's certificates.

[8] Exhibit 5 contains only the cover and signature pages of the contract to illustrate the parties thereto and the date on which it was entered and to protect certain confidential information.

("IOAs") executed by the members of the newly formed entities on November 9, 2021. Am. Compl. ¶¶ 113, 117-122; *see* Dkt. 25, Exhs. 6, 7, 8, and 9.

The parties entered into the MOU "for the purpose of describing and agreeing [to] the general terms of a transaction or transactions to form a business partnership . . ." Dkt. 25, Exh. 6 at 1. They agreed "to work in good faith, on a best-efforts basis during the Term of this MOU, to achieve the MOU objectives on a commercially reasonable and timely basis." *Id.* The MOU makes clear its provisional and aspirational nature. It "generally describes the arrangements and objectives of the parties" and expressly provides that "[n]othing in the foregoing provisions 1 through 10 above constitutes valid or legally binding obligations or restrictions on the Parties." *Id.* 5.

Each IOA has an identical Article IV, which provides:



Dkt. 25, Exhs. 7, 8, 9. The three IOAs also provide that, unless and until final operating agreements were executed, they could operate only by unanimous consent. *Id.* at § 5.2. No final operating agreements were executed. Am. Compl. ¶¶ 118-120, 217, 232.

*WMO Terminates Its Participation After Plaintiffs Change Course*

About one month after the parties' MOU, Hans Schneider replaced Zøhner as CEO of WMO. Am. Compl. ¶ 140. Over the course of the next several weeks, the parties to the MOU

discussed various potential financing options and business arrangements by which the project might proceed. In January 2022, Treadwell and Landry told WMO that they had signed a letter agreement with two other entities, Guice Offshore and Amber Infrastructure, to bring them into the proposed business. *Id.* ¶¶ 151-52. Schneider then told Treadwell and Landry that "he believe[d] the proposals for financing that were presented were far away from what ha[d] been the foundation of any agreements between the parties and that the setup was too complicated." *Id.* ¶ 187. The next day, WMO invoked the termination provision in the MOU and ended its involvement in the POMS effort. *Id.* ¶ 199; Dkt. 25, Exh. 11.

<u>**Argument**</u>

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022). Although for the purposes of a motion to dismiss the Court will accept as true all of the factual allegations in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[i]n reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the complaint, annexed exhibits, documents referenced but not attached to the complaint, and matters subject to judicial notice, such as public records." *Ross v. Deutsche Bank Nat'l Tr. Co.*, 933 F. Supp. 2d 225, 229 (D. Mass. 2013).

**A.    The Court Lacks Subject Matter Jurisdiction Over This Action**

Plaintiffs claim that "[t]his Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000." Am. Compl. ¶ 14. However, to have diversity jurisdiction, Plaintiffs and Defendants must have diverse citizenship, meaning that no plaintiff

can be a citizen of any jurisdiction in which a defendant is a citizen, and no defendant can be a

citizen of any jurisdiction where a plaintiff is a citizen. 28 U.S.C. § 1332.

It is the plaintiff's burden to plead proper diversity and diversity jurisdiction cannot be

waived by the parties; a court must dismiss if it finds that diversity jurisdiction is lacking.[9]

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

Furthermore, for a limited liability company, such as POMS, the domicile of the entity

itself is irrelevant – it is the domicile of the *members* of the entity that must be alleged and then

examined. *D.B. Zwirn Special Opp. Fund, L.P. v. Mehrotra*, 661 F.3d 124, 127 (1st Cir. 2011)

("[T]he citizenship of a limited liability company 'is determined by the citizenship of all of its

members . . . no diversity exists when an alien appears on both sides with a domestic party or

parties on only one side." *Auctus Fund, LLC v. Drone Guarder, Inc.*, 588 F. Supp. 3d 177 (D.

Mass. 2022) (Young, J.), *citing Grupo Dataflux v. Atlas Glob. Grp. L.P.*, 541 U.S. 567 (2004).

Here, Plaintiffs do not identify the members of POMS. Am. Compl. ¶ 7. As such, their

pleading fails on its face.[10] Plaintiffs may attempt to resuscitate their claim by identifying the

POMS members in a second amended pleading and then argue that the membership of POMS at

---

[9] The fact that the lack of diversity jurisdiction was created only after the addition of POMS by Plaintiffs' is irrelevant. *American Fiber & Finishing, Inc. v. Tyco Healthcare Grp*, 362 F.3d 136 (1st Cir. 2004) (plaintiff "destroyed diversity jurisdiction when it amended its complaint and jettisoned Tyco International (a diverse party) in favor of Tyco Healthcare (a non-diverse party)"); *see Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 21 (1st Cir. 2008) ("the 'contamination theory' prevents plaintiffs from creating diversity jurisdiction "simply by omitting [the nondiverse party] from the original complaint and then waiting for [that party] to be joined under Rule 19."). Plaintiffs chose to amend their complaint and must live with the consequences of that decision.

[10] Notably, Plaintiffs' amended complaint identifies a member of WMO and the members of Treadwell (but misidentifies Treadwell as a corporation rather than an LLC).

the time the initial complaint was filed created diversity jurisdiction. But any such effort must fail in light of Plaintiffs' own pleadings.

For diversity purposes, Landry and Treadwell are citizens of the United States and all Defendants are citizens of Denmark.[11] Plaintiffs' decision to add POMS as a party has eliminated the Court's subject matter jurisdiction. When formed, POMS had two members: Holding 1 and WMO.[12] Holding 1 was owned, in turn, by Holding 2 and WMO. Finally, Holding 2 was owned by Landry, Treadwell, and WMO. Thus, at formation, POMS included a Danish member, WMO.

Plaintiffs may argue that at the time this action was filed, WMO had withdrawn from POMS. But Plaintiffs claim the purported withdrawal was improper because WMO did not provide the proper notice of withdrawal. Am. Compl. ¶¶ 233-38. Therefore, based on Plaintffs' allegations, WMO is still a member of POMS. The addition of POMS as a plaintiff destroys diversity jurisdiction.[13]

---

[11] The fact that foreign citizens are involved in this action does not change the analysis. *See*, *e.g*, *In re DePuy Orthopaedics*, 953 F.3d at 894–95 (6th Cir. 2020) ("What happens, though, if foreign citizens are on both sides of a dispute but a state citizen is on only one side? This fact pattern does not fit § 1332(a)(3) because citizens of different states do not fall on both sides. And it does not fit § 1332(a)(2) because we have read that provision to require 'complete' diversity—meaning that only state citizens are on one side of the dispute and only foreign citizens are on the other. For what it is worth, the other circuit courts to have addressed this issue agree with our complete-diversity reading of § 1332(a)(2).") *See also M & I Heat Transfer Prods, Ltd. v. Willke*, 131 F. Supp. 2d 256, 260 (D. Mass. 2001) (diversity jurisdiction is not 'complete' where plaintiff and defendants were all citizens of Canada); *Yarala v. Star Health and Allied Ins. Co.*, No. 12-cv-11849-IT, 2014 WL 12689938, at *3 (D. Mass. 2014) ("Cases between aliens on one side and aliens and citizens on the other [] do not fit the jurisdictional pigeonhole.")

[12] It is not altogether clear which World Marine entity – WMO or WMO LLC is alleged to be the member of POMS but for the diversity analysis it does not matter – since WMO LLC is a limited liability company, one looks to the citizenship of its members for determining diversity. Either way, only the citizenship of WMO is relevant.

[13] While Defendants believe that WMO's withdrawal from POMS was proper, those beliefs cannot be considered on a motion to dismiss. It is Plaintiffs' allegations that control, and based on those allegations there is no diversity.

**B.  This Court Lacks Personal Jurisdiction Over Zøhner and Kristensen**

In matters involving officers of a corporation, a court must assess jurisdiction over the individual in his personal capacity and not as an officer of the company. *M–R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 279 (D. Mass. 2008) ("jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation."). "[M]ore than mere participation is required" for jurisdiction over the person. *Id*. Only if the individual acted for his *personal interests*, rather than the interests of his employer; outside the scope of his employment, or as the alter ego of the entity, may the forum state exercise personal jurisdiction over him. *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.,* 193 F. Supp. 2d 296, 302 (D. Mass. 2002); *M-R Logistics*, 537 F. Supp. 2d at 280.

The allegations against Zøhner are brought in his capacity as CEO of WMO. He is not alleged to have acted to serve his personal interests that somehow differed from the interests of his employer, outside of the scope of his employment, or as the alter ego of WMO. As CEO, he had meetings and phone calls to explore aspects of the proposed joint venture; sent emails to Plaintiffs and third parties communicating regarding the proposed joint venture; and traveled to Massachusetts to conduct business – *all on behalf of WMO*. Am. Compl. ¶¶ 15, 32-35, 40, 43-44, 48, 53-54, 57, 67, 69, 72, 79, 86, 93, 122, 128, 130, 133. Without purposefully connecting himself to Massachusetts for his personal interests, he cannot be subject to jurisdiction here. *M-R Logistics*, 537 F. Supp. 2d at 279.

The court lacks jurisdiction over Kristensen for the same reasons. The Plaintiffs do not allege that Kristensen was a corporate officer of WMO. They only allege that Kristensen is the COO. *See* Am. Comp. ¶ 12. Indeed, Plaintiffs repeatedly admit that Kristensen was acting on

behalf of WMO. *Id* at ¶¶ 4, 15, 96. Since there are no allegations that Kristensen acted outside of his role as COO, there is no basis for personal jurisdiction over him.

### C.  *Neither Zøhner Nor Kristensen Owed Any Fiduciary Duty To The Plaintiffs*

To maintain a claim for breach of fiduciary duty, Plaintiffs must allege the existence of a duty arising from a fiduciary relationship between the parties, breach of that duty, damages, and a causal relationship between the breach and the plaintiff's damages. *Qestec, Inc. v. Krummenacker*, 367 F. Supp. 2d 89, 97 (D. Mass. 2005). Count III of the Amended Complaint appears to rely on two theories to support its claim that Zøhner and Kristensen owed a fiduciary duty to the Plaintiffs: (a) Zøhner was a "director" of POMS and Kristensen was a "substitute director" of POMS; and (b) Zøhner and Kristensen instilled trust and confidence in Plaintiffs that induced them to enter into agreements with third parties. Both theories fail as a matter of law.

*First*, Plaintiffs' pleading demonstrates a fundamental misunderstanding of the legal structure of limited liability companies in Massachusetts. LLCs have members, who are the equivalent of shareholders in a corporation. Mass. Gen. Laws ch. 156C, § 1, *et seq*. In a Massachusetts closely-held entity, it is the members (or shareholders) who have fiduciary duties. *DiPietro on Behalf of Mari Holdings MD, LLC v. Fireman*, No. 2084CV01865BLS2, 2021 WL 3493756 (Suffolk Sup. Ct. June 3, 2021) *citing Pointer v. Castellani*, 455 Mass. 537, 549 (2009).

Here, Plaintiffs incorrectly allege that "[t]he Parties were the only members of POMS." Am. Compl. ¶ 251. In fact, neither Zøhner nor Kristensen were ever members of POMS—the members of POMS during the relevant time period were WMO and Holding 1. *See* Dkt. 25, Exh. 7. Moreover, the allegations that Zøhner was a "Director" of POMS and Kristensen was a "substitute Director" (Am. Compl. ¶¶ 235-38) fail because there is no such thing as a director (or substitute director) of an LLC, only members and managers. *See* Mass. Gen. Laws ch. 156C, § 1,

*et seq*.[14] Indeed, Section 5.1 of the POMS IOA states that it is a member-managed company, meaning that it had only members, not managers.[15] Thus, neither Zøhner nor Kristensen owed any fiduciary duties to Plaintiffs as supposed members or "directors".[16]

*Second*, Plaintiffs allege that Zøhner's "actions and statements as then CEO of WMO instilled trust and confidence in Landry and Treadwell to enter into the MOU and POMS with WMO." Am. Compl. ¶ 169. But that, in and of itself, does not establish a fiduciary duty on the part of Zøhner. *See Ahsan v. Homebridge Fin. Servs, Inc.*, 405 F. Supp. 3d 208, 217 (D. Mass. 2019) ("one party cannot unilaterally transform a relationship into a fiduciary relationship merely by putting absolute trust into the other party").

Massachusetts courts recognize that "business transactions conducted at arm's length generally do not give rise to fiduciary relationships." *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300, 311-12 (1st Cir. 2022). Only in an exceptional case—where a relationship develops such that "one party reposes its confidence in another"—can an arm's-length transaction gives rise to a fiduciary duty. *Id*. at 312. To determine if this transformation has

---

[14] Kristensen was not a signatory to the MOU or any of the IOAs. *See* Am. Comp. ¶ 87 ("Jones on behalf of TFIC, Zøhner on behalf of WMO, and Landry executed a Memorandum of Understanding"); *Id*. ¶ 122 ("Zøhner signed each IOA on behalf of WMO").

[15] Landry is listed as the sole manager of POMS in its certificate of organization. *See* Dkt. 25, Exh. 2. No corporate document on file with the Secretary of the Commonwealth lists either Zøhner or Kristensen as a manager.

[16] Plaintiffs' reference to the term "Director" comes from the MOU. In it, the parties state that Zøhner and others were to serve as directors of POMS. However, the POMS IOA, which was executed *after* the MOU and is the controlling governance document for POMS makes no mention of the position of director. The mere reference to the word "Director" does not create the legal authority to require the Defendants to meet a fiduciary duty for a position that does not exist as a matter of law or under the entity's operating agreement. *But see Genesis Technical & Financial, Inc. v. Cast Navigation, LLC*, 74 Mass. App. Ct. 203 (2009) (court referred to "directors" and "board of directors" of LLC without any discussion of legal basis for concluding that such roles existed).

occurred, "courts look to the defendant's knowledge of the plaintiff's reliance and consider the relation of the parties, the plaintiff's business capacity contrasted with that of the defendant, and the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Id.* at 313.

Here, Plaintiffs' allegations establish that they were sophisticated parties, actively engaged in an arm's-length transaction, who did not rely on the Defendants. For example:

- Landry established POI to build and operate windfarm support vessels. Am. Compl. ¶ 20.

- Landry worked with WMO to engage with Treadwell as partner. *Id.* ¶¶ 29, 33-34, 44.

- Plaintiffs and WMO together signed a letter of intent to engage with a vessel designer and shipyard to complete engineering and design work. *Id.* ¶¶ 51-53.

- Landry traveled with Kristenten to the US to conduct client meetings. *Id.* ¶ 60.

- Third parties who were interested in the transaction as investors presented themselves to both Landry and WMO. *Id.* ¶ 67.

- Landry and Treadwell both had discussions with Zøhner about the potential effects of a change in control or ownership in WMO. *Id.* ¶¶ 76-77.

- Both the Plaintiffs and WMO signed the MOU as owning members of POMS. *Id.* ¶ 86.

- Treadwell drafted operating agreements, submitted financial statements for credit review, and executed guarantees. *Id.* ¶ 90.

- Treadwell provided the financing model for lenders and investors. *Id.* ¶ 79.

Plaintiffs' bare recitation of the language of instilling trust and confidence, without alleging *facts* showing how this relationship was anything more than an arm's-length negotiation, is insufficient to plausibly claim they "repose[d] 'faith, confidence, and trust in [Defendants'] advice.'" *See Traverse v. Gutierrez Co.*, No. 18-CV-10175-DJC, 2019 WL 3082828, at *5 (D. Mass. July 15, 2019).

*Third*, Plaintiffs' conclusory assertion that Defendants' expertise and knowledge "induced" them to enter into the MOU and the IOAs is insufficient. Where the claim of breach of

fiduciary duty is based on fraud or alleges an intentional breach, it must satisfy the more rigorous

standards of Rule 9(b). *See Sachs v. Sprague*, 401 F. Supp. 2d 159, 170 n.15 (D. Mass. 2005).

*Fourth*, with respect to Kristensen, he had no duty to disclose that which he did not

know. Fraud by nondisclosure only occurs when the plaintiff can prove that the defendant had a

duty to disclose such information. *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F.

Supp. 2d 156, 162 (D. Mass. 2010). Here, Plaintiffs seek to impose an affirmative duty on a

subordinate employee to investigate whether a CEO has board authority to enter into contracts—

when said employee is not a member of the board at the time of the alleged actions. Assuming,

*arguendo*, that Zøhner lacked the authority to enter into the contracts, Plaintiffs have failed to

plausibly allege that Kristensen had a duty to disclose this information, because Plaintiffs have

not plead any allegations that Kristensen knew that Zøhner lacked the authority.

Indeed, Plaintiffs' argument defies logic. They allege that Zøhner did not have board

mandate to enter into these agreements, and that was what Kristensen had a duty to disclose. *See*

Am. Comp. ¶ 147(a). At the same time, Plaintiffs allege that Kristensen became a member of the

board when Zøhner was removed as CEO, which was *after* Zøhner had signed the agreements.

*See id.* ¶ 148(d) ("After Schneider replaced Zøhner, Kristensen was made a Board of Director").

Plaintiffs only allege that "[c]learly, Kristensen was aware of Zøhner's actions, the executed

contracts and IOA as well as PCGs" (*see Id.*) and "Kristensen knew of Zøhner's change in

position" (*see Id.* ¶ 195). These conclusory allegations do not pass muster.

### D.      Counts IV and VI Must Be Dismissed Because Plaintiffs have Failed to Plead Fraud with Particularity

"In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleading must specify "what the

underlying misrepresentation was, who made it, and when and where it was made." *Katz*, 28

F.4th at 308. The complaint must particularly state "the time, place, and content of an alleged

false representation." *United States ex. rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5, 13 (1st

Cir. 2016). Conclusory allegations are insufficient under Rule 9(b). *Id*. The purpose of the

particularity requirement is to provide the defendant with "notice of the grounds on which

plaintiff's fraud claim rests" and "enable them to prepare meaningful responses . . .." *Wayne Inv.,*

*Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984). The Rule 9(b) standard applies whether

the claim is called "fraud in the inducement" or just plain "fraud." *See N. Am. Catholic Educ.*

*Programming Found., Inc.* v. *Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).

Plaintiffs' references to "statements" that allegedly "induced" Plaintiffs to enter into

agreements, and that those "statements" by "Defendants" were "false and misleading because

Defendants never intended to be involved with POMS," are generalized vague conclusions

insufficient to state a claim for relief. Am. Compl. ¶¶ 260, 266-68.

First, Plaintiffs rely on their contention that *some* statements Defendants made were true

to prove that *some other* statements Defendants made were false. But Plaintiffs fail to specify

which statements are misleading and which ones are not. *See id.* ¶ 148 ("Clearly *either* Zøhner

was lying *or* [WMO] and Schneider were lying" [emphasis added]). Second, simply stating that

WMO, or any of the other named Defendants, did not intend to be involved with POMS does not

meet Rule 9(b)'s heightened scrutiny standard. Plaintiffs allege no facts that would make it

plausible to conclude that Defendants entered into agreements with Landry and Treadwell to

ultimately consummate a business relationship with other US maritime companies. *See Hayduk*

*v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) (dismissing claims that did not provide "supporting

facts regarding the circumstances surrounding the formation of the conspiracy to defraud

plaintiffs"); *N. Am. Catholic Educ.*, 567 F.3d at 13 (dismissing fraudulent inducement claim that

Defendants "never intended to follow its business plan" because the "assertion is not . . .
supported with particulars that suggest scienter."). This hypothetical inference is insufficient.

Plaintiffs' attempt at particularity also fails as a matter of law. Plaintiffs allege,
"[s]pecifically, Zøhner and Kristensen held WMO out as having the knowledge, skill and
finances to engage in the business that weas being planned." *See* Am. Comp. ¶ 261. An
actionable statement cannot be "merely a matter of opinion, estimate, or judgment." *Malaro v.
Wilkie*, __ F. Supp. ___, No. 22-10548, 2022 WL 16857194, at *3 (D. Mass. Nov. 10, 2022)
citing *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 772 N.E.2d 1054, 1066 (2002);
*see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 329 (1st Cir. 2008)
(defendant's "bragging its engine up like there was no tomorrow" was nonactionable puffery.)

First Circuit law prohibits Plaintiffs from attempting to *infer* fraud based on their own
assumptions regarding Defendants' collective state of mind. *See Doyle v. Hasbro, Inc.*, 103 F.3d
186, 194 (1st Cir. 1996). Plaintiffs allege that the unspecified fraudulent statements or omissions
were made by Defendants "for the purpose of inducing the Plaintiffs to engage in pursuing the
contracts that were awarded as Defendants could not so *[sic]* on their own." Am. Compl. ¶ 259.
They also allege that "[u]pon information and belief, [WMO] withdrew from POMS to
specifically pursue opportunities with Foss and other US Maritime companies in direct
opposition of the MOU and Interim Operating Agreements." *Id.* ¶ 209. These allegations
regarding Defendants' intent while engaging in a purported fraud are insufficient under Rule 9.
*See Doyle*, 103 F.3d at 194.

In a final superficial allegation, while Plaintiffs claim that "Defendants lied to the
Plaintiffs" (Am. Compl. ¶ 282), they again fail to specify which of the individual Defendants

- 14 -

verbalized the alleged lies, when those alleged lies were made, what exact statements were uttered, and where those statements were uttered. *See Katz*, 28 F.4th at 308.

Specificity in allegations of fraud is a basic requirement under Rule 9(b). *See Katz*, 28 F.4th at 308. Plaintiffs' failure to meet these minimum pleading requirements does not give Defendants notice of the specific fraudulent statements or omissions underlying the fraud claims or to prepare meaningful responses to those claims. *Dumont v. Reily Foods Co.*, 934 F.3d 35, 39 (1st Cir. 2019). Counts IV and VI should therefore be dismissed under for failure to plead with specificity under Rule 9(b).

### E.     Count V For Tortious Interference Fails Because There Are No Plausible Allegations That Zøhner Or Kristensen Had An Improper Motive or Actual Malice

To state a claim for tortious interference with a contractual relationship, a plaintiff must allege "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991). "Mere silence or nondisclosure generally does not create an actionable misrepresentation. Silence, however, 'may be actionable where the relationship of the parties creates a particular legal or equitable obligation to communicate all the facts.'" *Masso v. United Parcel Serv. of Am., Inc.*, 884 F. Supp. 610, 616 (D. Mass. 1995).

Here, Plaintiffs' tortious interference claim alleges that Defendants were aware of the contracts POMS had with GE and Vineyard Wind, and that "Defendants intentionally and maliciously interfered with those contracts for the purpose of harming POMS for the benefit of [WMO]." Am. Compl. ¶¶ 272-73. This supposed "interference" occurred when Zøhner acted outside his corporate authority "by entering into contracts" because, as a result of the Jones Act,

- 15 -

WMO "could not otherwise engage and secure the investment of another US Maritime company." *Id.* 274-75. These claims are insufficient to support a tortious interference claim.

Plaintiffs allege that WMO terminated the MOU in order to pursue other business opportunities. *See* Am. Compl. ¶ 209 (alleging that "WMO withdrew from POMS to specifically pursue opportunities with Foss and other Maritime companies"). Nothing in the pleading suggests that Zøhner or Kristensen ever took steps that prevented GE, Vineyard Wind, or POMS from continuing any existing contractual relationships. The failure to plead that Zøhner or Kristensen ever "knowingly induced" GE or Vineyard Wind to terminate their contracts with POMS is fatal to Plaintiffs' claim. *See Blixeth v. Byrne*, 214 F. Supp. 3d 97, 105 (D. Mass. 2016) (dismissing tortious interference claim where plaintiff failed to allege that Defendant "prevented [a party to the contract] from doing anything."); *see also Draghetti v. Chmielewski*, 416 Mass. 808, 816 (1994) (a defendant must "knowingly induce" a breach of contract).

Moreover, WMO's withdrawal from the MOU and from POMS was wholly consistent with its express rights under the MOU. *See* Dkt. 25, Ex. 6 ¶ 12. A party's exercise of its valid contractual rights cannot constitute an "improper means" for a tortious interference claim. *Skyhook Wireless, Inc. v. Google, Inc.*, 86 Mass. App. Ct. 611, 622 (2014) (defendant's exercise of its contractual rights "did not constitute improper means" for purposes of a tortious interference claim). Accordingly, the contention that WMO's withdrawal from the MOU amounted to tortious interference is invalid.

Finally, assuming *arguendo* that WMO withdrew from the POMS effort "to specifically pursue opportunities with Foss and other US maritime companies," (Am. Compl. ¶ 209) such a purpose is not "improper". Massachusetts courts have consistently held that a defendant acting to advance its own economic interests is not acting with an "improper purpose." *See Am. Paper*

*Recycling Corp. v. IHC Corp.*, 707 F. Supp. 2d 114, 122 (D. Mass. 2010); *see also Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*, 62 Mass. App. Ct 34, 39 (2004) ("That the plaintiff may have suffered a loss as a consequence of the defendant's pursuit of its own interest is a by-product of a competitive marketplace; it does not render the defendant's effort tortious"). Plaintiffs' allegations regarding WMO's decision to withdraw from POMS fall well short of alleging that WMO acted with any improper motive or means and if WMO acted properly, then so did its employees. *See ADH Collision of Bos., Inc. v. Wynn Resorts, Ltd.*, No. 19-CV-10246-RGS, 2020 WL 3643509, at *3 (D. Mass. July 6, 2020) (rejecting tortious interference claim where there was no evidence that defendant "misrepresented any facts, defamed anyone, indicated an intent to harm [plaintiff] or exhibited any motive other than to benefit itself financially"). For these reason, Plaintiffs' tortious interference claim cannot survive.

### F.   The Negligent Misrepresentation Claim Is Barred By The Integration Clauses

Finally, to state a claim for negligent misrepresentation, Plaintiffs must allege (1) that Defendants were acting "in the course of their business, profession, or employment, or in any other transaction which they had a pecuniary interest;" (2) that Defendants supplied false information for the guidance of Plaintiffs in their business transactions; (3) without exercising reasonable care or competence in obtaining or communicating the information; (4) that Plaintiffs justifiably relied on the information; and (5) that Plaintiffs' justifiable reliance caused them to suffer pecuniary loss. *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471-72 (2009). "Mere silence or nondisclosure generally does not create actionable misrepresentation." *Masso v. United Parcel Serv. of Am., Inc.*, 884 F. Supp. 610, 616 (D. Mass. 1995) .

Plaintiffs cannot recover for negligent misrepresentation in light of the integration clauses in the POMS IOA and MOU. Specifically, paragraph 8.3 of the POMS IOA expressly states that "[t]his Interim Agreement constitutes the entire operating agreement among the Members. No

Amendment or modification of this Interim Agreement shall be effective unless approved in writing …." Dkt 25, Exh. 7 ¶ 8.3. The MOU contains a similar integration clause. Dkt. Exh. 6 ¶ 20. Both clauses necessarily insulate the individual Defendants from claims for any supposed negligent misrepresentations during negotiations. *See Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 432 (2000) ("To ignore a merger clause and allow recovery for a negligent misrepresentation does little to promote honesty and fair dealing in business relationships").[17]

## Conclusion

For these reasons, the claims against Zøhner and Kristensen should be dismissed.

| | |
|---|---|
| **LARS CHRISTIAN ZØHNER** | **JIMMY KRISTENSEN,** |
| By his attorneys, | By his attorney, |
| | |
| */s/ Payal Salsburg* | */s/ Andrea L. Martin* |
| Payal Salsburg, Esq., BBO #568812 | Andrea L. Martin (BBO #666117) |
| Marc C. Laredo, Esq. BBO #543973 | BURNS & LEVINSON LLP |
| LAREDO & SMITH, LLP | 125 High Street |
| 101 Federal Street, Suite 650 | Boston, MA 02110 |
| Boston, MA 02110 | 617-345-3000 |
| 617.443.1100 | amartin@burnslev.com |
| salsburg@laredosmith.com | |
| laredo@laredosmith.com | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF on counsel for the Plaintiffs on February 10, 2023.

*Payal Salsburg*
Payal Salsburg

---

[17] Plaintiffs broadly allege that Defendants "supplied false information to the Plaintiffs to guide them in their business transaction . . ." Am. Compl. ¶ 287. But the pleading does not explain what that supposed "false information" was.