UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL LANDRY, TREADWELL FRANKLIN INFRASTRUCTURE CAPITAL LLC, and PATRIOT OFFSHORE MARINE SERVICES, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>WORLD MARINE OFFSHORE A/S, WORLD MARINE OFFSHORE LLC, LARS CHRISTIAN ZØHNER, and JIMMY KRISTENSEN,<br><br>*Defendants.* | Civil Action No. 22-cv-11432-AK<br><br>**Consolidated Reply Memorandum of Lars Christian Zøhner and Jimmy Kristensen in Support of Their Motion to Dismiss the Amended Complaint** |

## Introduction

Plaintiffs' Opposition to the Motion to Dismiss the Amended Complaint evidences a fundamental problem: they repeatedly confuse the roles of the corporate parties to the Memorandum of Understanding and the Interim Operating Agreements with the roles of the individuals who worked for those corporate parties. Obfuscation notwithstanding, the Amended Complaint should be dismissed. First, Plaintiffs cannot establish diversity jurisdiction through an initial complaint that strategically left out a diversity-defeating party (POMS), then voluntarily amending their pleading to add that very diversity-defeating entity (POMS). Second, Plaintiffs conflate when Zøhner and Kristensen were acting on behalf of WMO with allegations that they were acting for their own personal benefit to make them personally liable for WMO's purported violations of its contractual obligations and alleged wrongful acts. The law does not permit such transference of liability. The reasons for dismissal still stand.

### A. The Addition of POMS as a Party Destroys Diversity Jurisdiction

Plaintiffs' decision to add Patriot Offshore Marine Services, LLC ("POMS") as a party to its Amended Complaint eliminates the Court's diversity jurisdiction. First Circuit law prohibits the type of two-step evasion of diversity that Plaintiffs attempt here.

As a threshold matter, Plaintiffs do not dispute that it is the domicile of the members of POMS (a limited liability company) that determines diversity jurisdiction. *See* Opp. (Doc No. 54) at 11. But Plaintiffs' argument that the diversity analysis is based on citizenship of the parties at the time of the initial complaint is a red herring. Plaintiffs rely on *Grupo Dataflux v. Atlas Global Grp, LP* but that case addressed "the question whether *a party's post-filing change in citizenship* can cure a lack of subject-matter jurisdiction that existed at the time of filing in an action premised upon diversity of citizenship." 541 U.S. 567, 568 (2004). That is simply not the case here. *Grupo* does not, therefore, resolve this issue in Plaintiffs' favor. 541 U.S. at 568.

Second, the fatal procedural fact that Plaintiffs side-step is that they cherry-picked diverse parties to initiate this action in federal court, and later added a diversity-busting plaintiff, POMS, in an amended pleading whose interests and/or claims arose prior to the commencement of litigation and whose interests were known to Plaintiffs at the time they initiated this action. First Circuit strictly prohibits this type of "artful" pleading to circumvent the diversity requirement. *See Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp, LP*, 362 F.3d 136, 140 (1st Cir. 2004) (dismissing action after plaintiff added non-diverse party in the amended complaint; to permit the plaintiff to do in two steps what it could not have done in one would allow for the easy circumvention of the completely diversity requirement). *See also In re Olympic Mills Corp.*, 477 F.3d 1, 11 (1st Cir. 2007) ("a plaintiff cannot circumvent diversity by

artful pleading; otherwise, a plaintiff could leave a non-diverse defendants out of the original lawsuit and then wait for them to be impleaded or otherwise joined.").[1]

Lastly, Plaintiffs' suggestion that WMO's Danish citizenship should not be considered in establishing POMS's domicile because WMO resigned as a member of POMS conflicts with Plaintiffs' allegation that *that very resignation* was improper. Am. Compl. ¶¶ 233-38. Plaintiffs cannot have it both ways – either WMO did not properly withdraw from POMS and is therefore still a member of POMS, or WMO resigned effective January 13, 2022. Opp. at p.11. Plaintiffs point to no law that permits POMS to "sit on" WMO's resignation for 6 months and accept that resignation when convenient to them.[2] Finally, the declaration of Michael Landry that purports to state that WMO was not a member of POMS or its parent companies as of September 7, 2022 (Opp. Exh. 1) states an impermissible legal conclusion and, in any case, cannot be relied on at this dismissal stage without appearing within the four corners of the Amended Complaint.

**B. Zøhner and Kristensen Did Not Act in Their Individual Capacities for Personal Jurisdiction to Attach and the "Primary Participant Theory" Fails On These Facts**

Plaintiffs' disingenuous assertion that the "uncontested allegations of the Amended Complaint show that both Defendants transacted business in the Commonwealth" is insufficient to assert personal jurisdiction over either Zøhner or Kristensen even under the primary participant theory (Opp. at pp.15-16) because Plaintiffs have not stated any plausible *facts* beyond conclusory allegations that either Zøhner or Kristensen derived personal benefits from their actions or acted beyond the scope of their employment. *See LaValle v. Parrot-Ice Drink*

---

[1] To be sure, this is *not* a situation where POMS's interest arose after this action was commenced, which the First Circuit recognized as an exception in *Olympic Mills*. 477 F.3d at 11-12.

[2] Plaintiffs' citation to the Massachusetts Limited Liability Company Act states that a "member may resign . . . not less than six months' prior," does not imply that a member's resignation is effective exactly six months after they resign as Plaintiffs want it to be. *See* M.G.L. c. 156 § 36.

*Prods of Am., Inc.*, 193 F. Supp. 2d 296, 302 (2002) (individual defendant who allegedly made fraudulent misrepresentations in the Commonwealth was not a primary participant to confer personal jurisdiction); *Bay Promo, LLC, v. Moncada Alaniz*, No. 20-cv-12050-RG, 2021 WL 1670180 at *3 (D. Mass. Apr. 28, 2021) (although corporation transacted business in Massachusetts, its officers acting in their corporate capacity did not have personal contacts to confer jurisdiction over them individually); *King v. Prodea Sys, Inc.*, 433 F. Supp. 3d 7, 16 (D. Mass. 2019) (plaintiff did not allege sufficient facts to support the "primary participant" theory which requires the individual derive personal benefit or act beyond the scope of their employment). Although Plaintiffs cite cases where personal jurisdiction over corporate officers was found, these cases stopped short of conducting a "primary participant" analysis and instead rested on the fact that in Massachusetts the "fiduciary shield" does not limit the reach of the Massachusetts Long-Arm Statute.[3] *See LaVelle,* 193 F. Supp. 2d at 302 (acknowledging the fiduciary shield does not block personal jurisdiction outright, but going one-step further, when applying the agency theory an individual defendant needs to be a "primary participant").

Finally, the cases Plaintiffs cite for personal liability for corporate officers were *not* deciding jurisdictional issues and are therefore inapposite. In *Bond Leather Co., Inc. v. Q.T. Shoe Mgf. Co., Inc.*, 764 F.2d 928, 938 (1st Cir. 1985), although the Court found that a corporate officer was individually liable for his tortious actions, the issue of whether there was personal jurisdiction was not raised. *Id.* Similarly, in *Frontier Mgmt Co, Inc. v. Balboa Ins. Co.*, 658 F.

---

[3] The cases cited by Plaintiffs did not apply the agency theory called for in *LaVelle* to determine whether the individual defendant derived a personal benefit or acted beyond the scope of their employment. *See, e.g., Johnston Creative Arts, Inc. v. Wool Masters Inc.,* 573 F. Supp. 1106, 1111-12 (D. Mass. 1983); *Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc.*, 901 F. Supp. 2d. 255, 263-64 (2012); *Trans Nation Travel Inc. v. Sun Pacific Int'l, Inc.,* 10 F. Supp. 2d 79, 83 (1998).

- 4 -

Supp. 987, 993 (D. Mass. 1986), while the court discussed individual liability of corporate officers for certain claims, the court did not discuss jurisdiction over the individuals. *Id.*

## C. Neither Zøhner nor Kristensen Owed Plaintiffs Any Fiduciary Duties

Plaintiffs' claim of breaches of fiduciary duties by Zøhner and Kristensen is based on the faulty theory that "as executives of WMO [which was a member of POMS] they owed fiduciary duties" to Plaintiffs. Opp. at p.22. That theory fails as a matter of law.

*First*, contrary to Plaintiffs' assertion, Zøhner and Kristensen cannot be "shareholders of WMO either directly or through its parent company Execs Invest." Opp. at p.2. That contention is not only absurd, but unsupported by law. Second, as an LLC, POMS had members (not shareholders). The MOU and IOAs make clear that neither Zøhner nor Kristensen were ever members of POMS. *See* Dkt. 25, Exh. 7. Zøhner and Kristensen thus did not owe any fiduciary duties to POMS by virtue of the corporate structure of POMS.

*Second*, Plaintiffs' reliance on *Ray-Tek Servs, Inc. v. Parker* for the proposition that a fiduciary "duty extended to both Zøhner and Kristensen as WMO executives" is misplaced because there, the individual defendant was *the president of the joint venture* and therefore owed fiduciary duties to the joint venture entity directly. 64 Mass. App. Ct. 166, 177 (2005). Here, there is *no* allegation that either Zøhner or Kristensen were executives of the joint venture entity POMS when they allegedly committed the wrongful acts.

*Third*, despite their belated denials,[4] Plaintiffs cannot avoid the import of their own allegations that demonstrate an arm's length transaction between WMO and POMS. The

---

[4] Plaintiffs' Opposition repeatedly lists certain "relevant terms" from the MOU and the IOAs which do not *in fact* appear in the IOAs. Many of those terms appear, instead, in a *draft* document that was never executed and is not enforceable. Plaintiffs' claim that the parties to the *draft* document were "bound to the commercial terms" therein is wrong as a matter of law. In addition, Plaintiffs ignore the fact that individual defendants are *not* parties to the MOU or IOAs simply because they executed those agreements on behalf of their employers.

allegations show sophisticated parties on both sides of the joint venture. While TFIC may have lacked industry knowledge regarding windfarm support vessels, Landry had that knowledge and expertise, and used it. *See* Am. Compl. ¶¶ 20, 29, 33-34, 44, 51-53, 60, 67, 76-77, 86. Further, to the extent that Landry lacked the financial expertise regarding the funding of the venture, TFIC had that expertise and used it. *See* Am. Compl. ¶¶ 67, 76-77, 79, 90.

*Fourth*, the claim of breach of fiduciary duty against Zøhner and Kristensen is based on fraud or alleges an intentional breach, and does not satisfy the rigorous standards of Rule 9(b). *See Sachs v. Sprague*, 401 F. Supp. 2d 159, 170 n.15 (D. Mass. 2005). Yet again conflating the obligations of WMO the entity with the obligations of Zøhner and Kristensen individually, Plaintiffs incorrectly assert that "Defendants … violated the exclusivity and non-compete clauses" in the MOU and IOAs, Opp. at p.9, and they breached their duty by their "wrongful resignation" from the POMS venture. Opp. at 10. These allegations in the Opposition – which do not appear in the Amended Complaint – fail because neither Zøhner nor Kristensen were parties to the POMS venture, and neither executed the MOU or the IOAs in their individual capacity.

Finally, though Plaintiffs allege breaches by Zøhner and Kristensen as "directors" of POMS and agents/employees of POMS, neither was a director of POMS because the IOA specified that the POMS was to be member-managed. *See* Dkt. No. 25, Exhs. 7-9, ¶ 5.2. While Plaintiffs wax on about the enforceability of the unsigned *draft* operating agreement for POMS because "the parties" had already agreed to the essential terms of the management and governance of POMS in the MOU, they ignore that the MOU *on its face* states that none of the obligations therein were binding. *See* Dkt. 25, Exh. 6, p.5 and ¶ 12.[5] *See Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 335, 341 (D. Mass. 2011) ("an agreement to enter into a contract

---

[5] Again, to the extent that Plaintiffs rely on the draft operating agreement for POMS, neither that document nor the terms therein appear within the four corners the Amended Complaint. The draft cannot be relied on stage.

which leaves the terms of that contract for future negotiation is too indefinite to be enforced"). Plaintiffs are correct that at this stage the court must consider the facts in the light most favorable to them, but the court cannot ignore contract law in so doing.

### D.   Counts IV and VI Must Be Dismissed for Failure to Plead with Particularity

Zøhner and Kristensen rely on their memorandum supporting their motion to dismiss for the argument that Counts IV and VI are not pled with the particularity required by Rule 9(b).

### E.   Count V For Tortious Interference Fails Because Mere Knowledge of a Contract Is Insufficient to Establish Intentional Interference Therewith

Plaintiffs' tortious interference claim also fails because the argument that the Amended Complaint alleges awareness by Zøhner and Kristensen that "a condition of the GE and Vineyard Wind charter parties were WMO's parent company guarantees, WMO's financing, and WMO's participation in the operation of the vessels." *See* Opp. at p.29. However, the fact of awareness *in and of itself* does not establish any "intentional and malicious interference" with the GE and Vineyard Wind contracts. In fact, as explained in the memorandum of law supporting dismissal, Zøhner or Kristensen are not alleged to have taken *any* steps that prevented GE, Vineyard Wind, or POMS from continuing any existing contractual relationships. *See Blixeth v. Byrne*, 214 F. Supp. 3d 97, 105 (D. Mass. 2016) (dismissing tortious interference claim where plaintiff failed to allege that Defendant "prevented [a party to the contract] from doing anything."). Moreover, Plaintiffs have not pled improper motive or malice, a necessary element of the tort claim.

To the extent that, WMO's withdrawal from the MOU and from POMS was the source of the "tortious interference," that withdrawal expressly permitted under the MOU (Dkt. 25, Ex. 6 ¶ 12) and cannot be the basis of a tortious interference claim. *Skyhook Wireless, Inc. v. Google, Inc.*, 86 Mass. App. Ct. 611, 622 (2014) (defendant's exercise of its contractual rights "did not constitute improper means" for purposes of a tortious interference claim). *See also Am. Paper*

*Recycling Corp. v. IHC Corp.*, 707 F. Supp. 2d 114, 122 (D. Mass. 2010) (a defendant acting to advance its own economic interests is not acting with an "improper purpose"); *Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B.*, 62 Mass. App. Ct 34, 39 (2004) ("That the plaintiff may have suffered a loss as a consequence of the defendant's pursuit of its own interest is a by-product of a competitive marketplace; it does not render the defendant's effort tortious").

### F. The Negligent Misrepresentation Claim Is Barred by The Integration Clause

Zøhner and Kristensen rely on the argument in their memorandum for the non-viability of Plaintiffs' negligent misrepresentation claim. To the extent that Plaintiffs rely on *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3 216, 224-28 (1st Cir. 2003) that case is inapposite because that case involved allegations of fraud – not negligence.

### Conclusion

For these reasons, and the reasons stated in the memorandum in support of the motion to dismiss, the claims against Zøhner and Kristensen should be dismissed.

| | |
|---|---|
| **LARS CHRISTIAN ZØHNER** | **JIMMY KRISTENSEN,** |
| By his attorneys, | By his attorney, |
| | |
| */s/ Payal Salsburg* | */s/ Andrea L. Martin* |
| Payal Salsburg, Esq., BBO #568812 | Andrea L. Martin (BBO #666117) |
| Marc C. Laredo, Esq. BBO #543973 | BURNS & LEVINSON LLP |
| LAREDO & SMITH, LLP | 125 High Street |
| 101 Federal Street, Suite 650 | Boston, MA 02110 |
| Boston, MA 02110 | 617-345-3000 |
| 617.443.1100 | amartin@burnslev.com |
| salsburg@laredosmith.com | |
| laredo@laredosmith.com | |

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF on counsel for Plaintiffs on March 31, 2023.

*Andrea L. Martin*
Andrea L. Martin